**\*\*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 5/28/20**

```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                 *
UNITED STATES OF AMERICA         *
                                 *
                                 *  No. 1:18-cr-00192-JL
vs.                              *  December 13, 2019
                                 *  12:40 p.m.
                                 *
IMRAN ALRAI,                     *
                                 *
              Defendant.         *
                                 *
* * * * * * * * * * * * * * * * *


        TRANSCRIPT OF BAIL REVIEW/DETENTION HEARING

         BEFORE THE HONORABLE JOSEPH N. LAPLANTE
```

APPEARANCES:

For the Government:     AUSA John S. Davis
                        AUSA Matthew Hunter
                        AUSA Cam T. Le
                        United States Attorney's Office

For the Defendant:      Timothy M. Harrington, Esq.
                        Timothy C. Ayer, Esq.
                        Shaheen & Gordon PA

Also Present:           John J. Commisso, Esq.


Court Reporter:         Brenda K. Hancock, RMR, CRR
                        Official Court Reporter
                        United States District Court
                        55 Pleasant Street
                        Concord, NH 03301
                        (603) 225-1454

P R O C E E D I N G S

THE CLERK: All rise for the Honorable Court. The Court has before it for consideration this afternoon a bail review hearing in Criminal Case 18-cr-192-01-JL, United States of America versus Imran Alrai.

THE COURT: All right. We're here in the court. The Probation Officer is here, I can see, who I assume was supervising the defendant during pretrial. Title 18 of the U.S. Code Section 3143 provides, "Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of a sentence other than a person for whom the applicable guideline promulgated pursuant to" federal law "does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with 3142 (b) or (c)."

There's a separate provision,(a)(2), that doesn't apply here, I don't think, because it applies to violent crimes, drug offenses, things of that nature. I don't think this case comes under that. But bottom line is, there is a presumption here of detention, unless I can find by clear and

1  convincing evidence that the defendant is neither a flight risk
2  or a danger to the community.
3        Anybody disagree with that, that that's the law?
4        MR. DAVIS:  No.
5        MR. HARRINGTON:  No, your Honor.
6        THE COURT:  All right.  Well, I don't find the
7  defendant to be a danger to the community at least in the way
8  that I think would matter for this type of determination.  He's
9  not a violent person, and there's no reason to think he would
10 harm himself or any member of his family or any member of the
11 public, but I do want to hear you on flight risk, because I
12 think that there's a legitimate flight risk here.  So I want to
13 hear what you think about it.
14       Are you moving for detention or release?
15       MR. DAVIS:  Detention.
16       THE COURT:  All right.  Let me hear your argument.
17       MR. DAVIS:  Your Honor, as the Court states, under
18 Section 3143(a) it's now the defendant's burden to show by
19 clear and convincing evidence that he's not likely to flee.  In
20 the government's view the calculus has changed profoundly.  The
21 government acknowledges that Mr. Alrai has been a compliant
22 person on release, but now things are different.  He faces a
23 lengthy prison sentence, as I calculate it, likely a minimum of
24 87 months under the *U.S. Sentencing Guidelines*.  He also has
25 strong foreign ties, as the Court has heard both in Pakistan

1 and in countries now where his siblings or other relatives
2 live, which I believe include Canada and the UK. He also owns
3 property in Pakistan. He owns real property. He owns the
4 house that Mr. Chaudhary lived in in Lahore. There are
5 proceeds that he's wired there, 1.2 million, that are not
6 accounted for. And there are his brother, Jawad, and employees
7 of UltPult, if that company is still operating, but certainly
8 the ability to live a comfortable life could he get himself to
9 Pakistan.
10 In addition, Mr. Alrai is not an honorable man, and he
11 has a proven facility for concealing and disguising his
12 identity and a penchant for lying to anyone he encounters, if
13 it helps his circumstances, and, frankly, the government does
14 not trust him. In addition, there is no colorable ground for
15 appeal here. The government cites U.S. v. Castiello, which is
16 C-a-s-t-i-e-l-l-o, First Circuit case, 878 F.2d 554. Where
17 there is not a strong appellate issue that's a proper ground
18 for the District Court to consider in revoking bail following
19 conviction.
20 Lastly, there's no sign of contrition here, your
21 Honor. The government sees no sign that there is a change of
22 ways, and there is a lot of money at stake here and the rights
23 of the victim, who has asked to address the Court briefly, but
24 under the circumstances there is not clear and convincing
25 evidence that there isn't a flight risk here, and the flight

1   risk is big.  So, we move to detain.
2           I would ask the Court to recognize Rick Voccio,
3   representing United Way.  He did ask to be able to address the
4   Court, and I think he has that right under the Victims' Rights
5   Act.
6           THE COURT:  Whether he has the right or not, I'm happy
7   to hear him.
8           MR. DAVIS:  Thank you.
9           THE COURT:  Mr. Harrington, do you want to be heard
10  first, or do you want to wait to hear from Mr. Voccio first?
11          MR. HARRINGTON:  I'll speak after Mr. Voccio, your
12  Honor.
13          THE COURT:  Okay.  Yes, sir.  Let me just be clear.
14  You're welcome here.  I'm happy to hear your views on this
15  issue.  I would ask you to understand this, though:  This is a
16  bail hearing, so what I'm considering is whether to detain
17  Mr. Alrai or to release him.  There's going to be a time for a
18  victim impact statement at sentencing.  I just want to make
19  sure you know the difference.  Please proceed.
20          MR. VOCCIO:  Yes, your Honor.  Thank you.
21          THE COURT:  Yeah.
22          MR. VOCCIO:  And thank you for the ruling today.
23          And thank you for everyone on the Federal Government's
24  side.
25          Just a couple of brief statements here, and John

1   Commisso is here as our attorney.  The persona that you see of
2   Mr. Alrai, in almost the year that I've worked with him, what
3   you've seen in two weeks is his demeanor been throughout
4   working at United Way.  It's no different.
5           The concern we have at United Way is, you know, this
6   doesn't end today.  There's going to be a press release.
7   There's going to be a lot of activity.  We're going to get
8   re-victimized.  We've got a lot of things we're having to work
9   through.
10          But we feel that we've done everything by the book
11  ever since we went through this 22 months ago.  And the feeling
12  that justice will get served with the time that you're going to
13  determine at a later date for Mr. Alrai to serve, and the fear
14  is that, if he was a flight risk and he left and he never
15  served that, besides the fact that he's not serving that time,
16  us and the community and the thousands of donors that we serve,
17  we're trying to save face and make certain that the right thing
18  is done here and for us to be able to say that justice was
19  served, he served the time, and I'm also hoping throughout this
20  process he does repent and have an opportunity that maybe
21  there's some good being done.
22          The thing -- when we hired him and we hire everybody
23  we always assume positive intent.  If it's in a weakness of a
24  charity, it's who we are.  We help people in need.  And the
25  fear here is that, given the deceit, the dishonesty and the

1   means to all of everything you've heard, there is a
2   potentiality that he won't serve that time and there will be
3   disappointment.  You'll be disappointed, we'll all be
4   disappointed, and that will be a real travesty.  That's all we
5   want to say.  Thank you.
6           THE COURT:  Yes, sir.
7           MR. COMMISSO:  Thank you, your Honor.  I would just
8   add briefly --
9           THE COURT:  Please identify yourself for the record.
10          MR. COMMISSO:  Yes, your Honor.  My name is John
11  Commisso.  I'm an attorney representing United Way.  I would
12  just add briefly to Mr. Voccio's comments, you know, the harm
13  to the United Way is impossible to measure, and we know that
14  they paid at least $6.6 million to DigitalNet, as the evidence
15  has shown.  There's been no effort or any beginning to repay
16  any of the harm, the cost, the damages that have been suffered
17  by the United Way, and so I think that detaining the defendant
18  today is the beginning of the process to ensure that they will
19  be compensated.  They'll never be made whole, but through
20  forfeiture and ultimately through restitution they will begin
21  to recover some of the money that they've lost as a result of
22  this crime.  And so, I think that that bears on the issue of
23  detention today, to ensure that Mr. Alrai is available, not
24  just to serve his sentence, his sentence of imprisonment, but
25  the part of his sentence that goes to the issue of victim

1    restitution that will be determined at a later date.
2             THE COURT:  Right.  Let me ask you a question.
3             Mr. Davis, if you don't -- if you object to this
4    conversation, just --
5             MR. DAVIS:  Not at all, Judge.
6             THE COURT:  All right.  There's three issues I'm
7    thinking about right now.  One is a flight risk, one is the
8    appeal that Mr. Alrai is inevitably going to pursue, probably
9    going to pursue, and then, third, is restitution.
10            One might argue that he'll be in a better position to
11   work with you or your counsel -- you are counsel, right -- his
12   counsel to work with you, and maybe there's a better chance of
13   some recovery.  Normally, that probably wouldn't be a factor
14   for me, but you are the United Way, right, and I wonder if it
15   might be more -- now, Mr. Davis doesn't want to hear this --
16   but I wonder from your perspective if it might be more
17   advantageous that Mr. Alrai is out.
18            Now, he may have zero intention of working with you,
19   because his counsel may -- he's got very good counsel, right?
20   And he may think that could prejudice him at sentencing or
21   appeal.  So, there might not even be a willingness there, but
22   let's assume for a minute there's willingness to engage with
23   you, recover funds that are donated funds in your case, raised
24   in the community and targeted through grants to deserving
25   recipients.  It's a tragedy.  Does that change your thinking at

1    all?

2         MR. COMMISSO: No, it doesn't, your Honor, and the
3    reason is, first, Mr. Alrai has had 18 months to work on making
4    restitution.  I mean, he could have done any number of things
5    over the last 18 months and hasn't done anything to begin to
6    make restitution, including $1.2 million that's unaccounted for
7    and transferred to Pakistan, including a $500,000 withdrawal
8    after he knew that he was being investigated by the FBI.  So, I
9    have no confidence that his continued freedom somehow is going
10   to be to the benefit of the United Way.

11        Number two, I think that the sooner that he is under
12   the closest possible supervision of the Court, including the
13   Probation Office and the other parts of the court system, work
14   can be done to identify whatever assets are available and make
15   sure that they are accounted for and that they are transferred
16   and paid into the Court so that they are available for
17   restitution.  I don't see that there's some benefit to allowing
18   him to be free so that he can continue to develop video games
19   with money that was stolen from the United Way as a means of
20   restitution.

21        THE COURT:  I see.  Thank you.
22        MR. COMMISSO:  Thank you, your Honor.
23        THE COURT:  I appreciate your words.
24        MR. VOCCIO:  Thank you.
25        THE COURT: All right, Mr. Harrington.  What do you

1    think?

2    MR. HARRINGTON: Thank you, Judge. A couple of things
3    I'd ask you to consider when you're thinking about flight risk,
4    Judge, is this case has been pending -- if you go from the date
5    that he was terminated, it's been about a year and a half. If
6    you go from the date he was placed out on bail, he's been out
7    on bail for 13 months now, and that's a significant period of
8    time that he's been out on conditions of bail, and I think you
9    would hear from Probation that he has honored all the
10   conditions, he's been compliant, he's done nothing that would
11   raise any eyebrows. That also gives him a significant period
12   of time, if he had wanted to flee, he could have done so, you
13   know, quite a while ago.

14   I would also point out as far as flight risk, Judge,
15   my client voluntarily surrendered both his United States
16   passport as well as his Pakistani passport, so he has no means
17   to legally exit the country, even if he desired to do that, but
18   there is no desire to do that, Judge.

19   And the second thing I would tell you about is his
20   ties to the community. He has been in the United States now
21   for going on 25 years, approximately. He's married to Saima,
22   who's been here, and you've seen her in the court every day.

23   THE COURT: Yes.

24   MR. HARRINGTON: They have two children. One is 18
25   years old, and he's attending the University of Vermont. His

1  name is Ahmed. He's a premed student at the University of
2  Vermont. He just started in his freshman year. They have
3  another high-school-age son, Ali. He goes to Windham High
4  School. He's 16 years old son. Obviously, both U.S. citizens,
5  born in the United States, with significant ties to this
6  country.
7        His mother and father, again, both U.S. citizens, live
8  with him. They both have medical issues. He has cared for
9  them for many years now, and he owns the home that they live
10 in.
11       So, he has significant ties to the community, both via
12 a property relationship with the home that they own but more so
13 his children and his wife and his parents. So, he has very
14 little reason to leave and much reason to stay.
15       So, as far as a likelihood of fleeing, very, very
16 unlikely that that would ever happen, Judge. I would suggest
17 to you that there is more than clear and convincing evidence
18 that he would not be a flight risk, given all those factors.
19 You can see in the bail order that was instituted by the
20 magistrate in this case that they imposed a number of different
21 conditions, you know, reporting requirements, not be able to
22 practice in certain areas relative to IT, those types of
23 things. I think those conditions could again be put in place
24 or maintained.
25       THE COURT: What's he been doing for work, if

1    anything?
2            MR. HARRINGTON:  He's been trying to work
3    independently, but it's really been very little work, Judge,
4    that he's been able to do.  They're relying on his wife's
5    income and those types of things.  So, obviously, in the
6    position he's been in he hasn't been able to work in his field.
7            THE COURT:  Is she still at the bank, or what's she
8    doing?
9            MR. HARRINGTON:  Saima, I forget.  Where are you now?
10                  (Discussion held off the record)
11           MR. HARRINGTON:  So, she's still in banking, Judge,
12   but she hasn't been working since they left Pentucket, so it's
13   going on, what, probably 13 months since she hasn't been
14   working?
15           THE COURT:  Oh, okay.
16           MR. HARRINGTON:  So, it's a tough situation.  They are
17   essentially at this point, you know, out of basically all their
18   personal savings that they had that they had available to them.
19   As you can see from the search and seizure warrants, and you
20   heard from Agent Donnelly, essentially all of their assets have
21   been frozen as a result of this.  So, that's obviously subject
22   to future discussions relative to forfeiture.
23           So, again, I don't think there's very much evidence
24   that he is a flight risk.  I think the ties to the community.
25   I think if you also see the lack of any criminal history, that

1  he has none. This is not a violent crime, as you've indicated,
2  so this is really not a dangerousness issue; it's a flight risk
3  issue.
4            THE COURT: Right.
5            MR. HARRINGTON: So, with that said, Judge, I don't
6  think that there is a flight risk. I think that the defense
7  has met that burden of clear and convincing evidence that he's
8  not a flight risk. I think those factors relative to the
9  surrender of the passport, his family members, his wife, his
10 children, his parents, would all militate against him being a
11 flight risk.
12           THE COURT: Thank you.
13           MR. HARRINGTON: And if you have any other questions,
14 Judge, I'm happy to answer them.
15           THE COURT: No, I don't. So, here's the thing about
16 bail in general and bail when it comes to post verdict: If it
17 wasn't a person who appeared to be an otherwise upstanding
18 member of the sort of white-collar professional community, we
19 wouldn't even be having this conversation. It would be,
20 "Goodbye. You're locked up pending appeal." Pending
21 sentencing at this point, I should say, sentencing. That's the
22 statute I'm applying.
23           I guess I just disagree, Mr. Harrington. I see him as
24 a flight risk. He's a high risk of flight. In a situation
25 where we're dealing with a post-verdict scenario the

1   motivations change and the risks and the odds change, right?
2   And you made the point that a lot of time has passed.  He's
3   never been a flight risk.  He always shows up.  I'm sure you're
4   not picking him up and driving him here.  He's showing up on
5   his own, he meets you here when he's supposed to be here, and
6   that suggests he will continue to do that.  It does suggest
7   he'll continue to do that.
8   　　　　　　　The problem is my experience with white-collar crime
9   defendants, both as a judge and as a prosecutor for a long time
10  in the state and federal system, is that there is a mentality
11  that goes along with being charged with one of these fraud
12  crimes where first people, they can't believe they would ever
13  be indicted: "How could that happen to me?  I'll explain
14  myself.  I could never be indicted."  And then it's, "Well, I
15  could never be convicted," sometimes.  And this defendant went
16  to trial, as is his right.  But the idea of sometimes entering
17  a guilty plea, the idea of articulating guilt is just very
18  difficult for someone who is used to sort of normal middle
19  class, in this case upper-middle-class life, maybe even
20  upper-class life.  The idea of saying out loud in a room like
21  this, "I'm guilty," difficult, or even when someone pleads
22  guilty or is convicted I find that many white-collar defendants
23  have zero capacity to really understand that a judge might send
24  them to prison.  And I guess -- I'm not a big varier or
25  departer from the guidelines without good reasons, and my

strong suspicion is the guidelines in this case probably suggest a substantial prison sentence.

So, I think he's a flight risk. I saw three or four people in this courtroom who have lived and live all over the world who count themselves as his friends who could sustain him in a situation of flight. His father was willing to walk in here and, from my estimation, bald-face lied, you know. And this is family. It's not like I'm surprised by it. But I just view him as a person who has the capacity to conceal and deceive and try to evade the consequences here and who would have support in this community and elsewhere to sustain himself, if he needed to do it. It's not like I'm saying I think he'll do it. I just don't think that there's clear and convincing evidence that he won't, and there is a great, a strong motivation to try to evade this result. I'll make a couple of comments, though, about it that affect my thinking.

You haven't talked about the appeal, Mr. Harrington. I assume you're going to appeal, but you haven't talked about an appeal, and I thought hard about a lot of these issues, and to the extent that there were any appeal issues in this case I think the acquittal has minimized them, much to the prosecution's chagrin, I'm sure. They don't like acquittals, but it's sort of the price you pay when you have a lawyer as a trier of fact. They fine-tooth comb you in a way a jury never really will. You wind up with an acquittal on some charges

1    that eliminate some appeal issues.  I don't see strong appeal
2    issues.  Your best appeal issue, of course, was your best trial
3    issue, intent, and if I'm incorrect that there was sufficient
4    evidence of intent here the convictions will be reversed.  I
5    don't think it's a strong issue, though.  I don't see any
6    others, based on the convicted counts.
7            I'll say this, though:  I'm going to order him
8    detained, but I'm not going to call it detained without
9    prejudice.  It's always without prejudice, because you can
10   always file a motion for release.  But I will say this:  To the
11   extent you can make a showing at some point to me about an
12   appeal issue that's strong and I've overlooked, I'd reconsider
13   it, because the one thing I do fear is detaining someone who is
14   wrongfully convicted.  I don't view this as that situation, but
15   if I'm wrong about that I'm sure you'll be the first to show
16   me, and I'll consider it, that you have an appeal that you
17   would like me to consider in the context of bail.
18           The second issue is this:  It's restitution.  You
19   might not want your client engaging in conversations like that
20   regarding restitution of victims, because you think it might
21   prejudice him for sentencing or appeal.  But to the extent he
22   does that and I'm made aware of it, that could affect my
23   thinking on detention presentence or pre-appeal, for what it's
24   worth.
25           But at this point, under the applicable statute, I

1  find that there is not clear and convincing evidence that the
2  defendant is not a flight risk, so I order him detained pending
3  sentencing.  Are there any other questions?  All right.
4           MR. DAVIS:  Your Honor, will the Court set a
5  sentencing date today?
6           THE COURT:  Yeah.  What is it, Charli?
7           THE CLERK:  It's March 31st, 2020, at 11:00 a.m.
8           THE COURT:  March 31st?
9           THE CLERK:  Yes.
10          THE COURT:  And, of course, if that doesn't work for
11 some reason, the Court is always open to working with counsel
12 to find a different date.
13          Again, I want to commend counsel for your
14 presentations and your performance in this case.  They were
15 exemplary.  We're adjourned.
16          THE CLERK:  All rise.
17      (WHEREUPON, the proceedings adjourned at 1:03 p.m.)

C E R T I F I C A T E

I, Brenda K. Hancock, RMR, CRR and Official Court Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of *United States v. Imran Alrai*, 1:18-r-00192-JL.

Date:    2/28/20            /s/ *Brenda K. Hancock*
                            Brenda K. Hancock, RMR, CRR
                            Official Court Reporter