AO 98 (Rev.12/11)  Appearance Bond

USDCNH-40A (3/12)

# UNITED STATES DISTRICT COURT
## District of New Hampshire

UNITED STATES OF AMERICA

v.

Case Number:  1:18-cr-192-JL

IMRAN ALRAI

Defendant

## APPEARANCE BOND

### Defendant's Agreement

I, IMRAN ALRAI _____ (defendant), agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( X ) to appear for court proceedings;
( X ) if convicted, to surrender to serve a sentence that the court may impose; or
( X ) to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

(    ) (1) This is a personal recognizance (unsecured) bond in the amount of $ _____ .
(    ) (2) This is a cash bond in the amount of $ _____ , which shall be deposited with the clerk of court.
( X ) (3) This is a secured bond of $ _____ , secured by:        SEE APPENDIX A

( X ) (a) a cash bond in the amount of $ _____ APPENDIX A _____ , which shall be deposited with the clerk of court, or

(    ) (b) a bail bond with a solvent surety (attach a copy of the bail bond, or describe it and identify the surety):

_____
_____
_____

( X ) (c) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it – such as a lien, mortgage, or loan – and attach proof of ownership and value)*:        SEE APPENDIX A

_____
_____

If this bond is secured by real property, documents to protect the secured interest may be filed of record.

AO 98 (Rev. 12/11) Appearance Bond                                                    USDCNH-40A (3/12)

### Forfeiture or Release of the Bond

*Forfeiture of the Bond*. This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

*Release of the Bond*. The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property*. I, the defendant – and each surety – declare under penalty of perjury that:

(1) all owners of the property securing this appearance bond are included on the bond;
(2) the property is not subject to claims, except as described above; and
(3) I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance*. I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: 04 - 10 - 2020                          _____
                                              Defendant's Signature

_____              _____
Surety/Property Owner--Printed Name           Surety/Property Owner--Signature and Date

_____              _____
Surety/Property Owner--Printed Name           Surety/Property Owner--Signature and Date

_____              _____
Surety/Property Owner--Printed Name           Surety/Property Owner--Signature and Date

Date: 4/10/20                                 _____
                                              ☐ United States Magistrate Judge
                                              ☒ United States District Judge

cc: Defendant
    U.S. Attorney
    U.S. Marshal
    U.S. Probation
    Defense Counsel

> Any third party posting cash bail, real property, or a corporate surety bond must sign this form where indicated. When a corporate surety bond is posted, the bonding company must comply with LR 65.1.1(e) and counsel for the defendant must conventionally file the original bond with an attorney certificate as required by LR 65.1.1(g).

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:18-cr-192-JL |
| IMRAN ALRAI, | |
| Defendant. | |

## APPENDIX A TO APPEARANCE BOND

This is a secured bond in the amount of approximately $3,251,888.50. It is secured by:

1.      9 Corliss Road, Windham, NH 03807. This property is not encumbered by a mortgage. A true and correct copy of the warranty deed, property card, proof of title insurance, and a notice of *lis pendens* are attached as Appendix A-1. A certified copy of the warranty deed will be delivered to the clerk as soon as practicable under the circumstances.

2.      21 Hampshire Drive, #115, Methuen, MA 01844. This property is not encumbered by a mortgage. A true and correct copy of the condominium unit deed and property card are attached as Appendix A-2. A certified copy of the condominium unit deed and proof of title insurance will be delivered to the clerk as soon as practicable under the circumstances.

3.      31 Lowell Road, Unit 1, Windham, NH 03087. This property is not encumbered by a mortgage. A true and correct copy of the warranty, trust documentation demonstrating Saima Alrai's beneficial ownership of the trust, property card, and proof of title insurance are attached as Appendix A-3. A certified copy of the warranty deed will be delivered to the clerk as soon as practicable under the circumstances.

4.      The 401(k) account, no. 1252840571 which, as of April 10, 2020, had a value of $122,674.42. This 401(k) account is frozen by court order (ECF No. 72) and counsel for the United States of America assents to the funds remaining frozen in that account.

5.      The Pershing LLC account, no. 6FY-450381 which, as of March 6, 2019, had a value of $212,000.00. The Pershing LLC account is frozen pursuant to a seizure warrant and counsel for the United States of America assents to the funds remaining frozen in that account.

6.      $1,936,623.89 in U.S. Currency, which was seized from Mr. Alrai and is presently held by the United States Marshals Service in its Seized Asset Deposit Fund.

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.                                                          No. 1:18-cr-192-JL

IMRAN ALRAI,

       Defendant.

## BOND CERTIFICATION

    This bond has been examined pursuant to Local Rule 65.1.1 and is recommended for approval.  It is required by law to be approved by a judge.

April 9, 2020                                           _/s/ Michael E. Strauss_
                                       Michael E. Strauss, Esq.

# APPENDIX A-1
# 9 Corliss Road, Windham, NH

BK 5226 PG 1159

Return to:
~~INFO~~ Imran Rahim Alrai
Saima Alrai
9 Corliss Road
Windham NH 03087

027906

2011 JUL -1 AM 9: 30

ROCKINGHAM COUNTY
REGISTRY OF DEEDS





## WARRANTY DEED

**KNOW ALL MEN BY THESE PRESENTS:** That Stephen W. Stanley and Terri L. Stanley, (f/k/a Terri L. Qualters) Husband and Wife, of 9 Corliss Road, Windham NH 03087, for consideration paid grant(s) to Imran Rahim Alrai and Saima Alrai, Husband and Wife, of 21 Hampshire Road, Apt. 115, Methuen MA 01844, as joint tenants with rights of survivorship, with WARRANTY COVENANTS:

That certain lot of land, with the buildings thereon, situated in Windham, Rockingham County, New Hampshire, as follows:

Lot No. 25-R-890 as shown on that Plan, defined as "Town of Windham, NH, OWNER: Henry & Theresa Rombly & Marblehead Landholding LLC, PO Box 642, Windham, NH 03087, scale 1" = 100', date: June 1999 Subdivision Plan, Tax Map 25-R-Lots 602, 630 and 675, Title: "Fletcher Corner Estates" consisting of 30 sheets, Edward N. Herbert Assoc., Inc. Land Surveying/Civil Engineering, One Frost Road, Windham, NH 03087"; recorded in the Rockingham County Registry of Deeds as Plan No. D-28411, to which Plan reference may be made for a more particular description.

Also conveying with each lot, an undivided interest in the Open Space Parcels shown on said Plan. The Grantee covenants that each undivided interest conveyed shall not be conveyed separately from each of the lots herein conveyed and that any further conveyance of any lot herein conveyed shall include an undivided interest so that each grantee, successor or assign shall be required to retain an ownership interest in the Open Space along with ownership of any of within conveyed lots at all times.

Subject to the following:

1. Easement granted to Public Service Company of New Hampshire and New England Telephone and Telegraph Company by instrument recorded with the Rockingham County Registry of Deeds at Book 2864, Page 882.

RE: 2011-13212                                                                 Page 1 of 3

BK 5226 PG 1160

2. A 25 foot Roadway Easement, 25 foot Northerly of and parallel with the center line of the former dark entry school house road as described on Plan #D-20823.

3. Slope Easement for the benefit of the adjoining Lot 25-R-801, and the Southeasterly corner of said Lot 25-R-801 recorded with said Deeds at Book 2864, Page 2749 and shown on Plan #D-20823.

4. Wetlands Permit dated December 15, 1999 and recorded with said Deeds at Book 3490, Page 39. There shall be no further alteration of Wetlands for lot development, driveways, culverts, or for septic setback. This condition shall be restated in the deed for any subsequent conveyance for each of the lots set forth herein.

5. Declaration of Open Spare Covenants, Restrictions and Easements by instrument dated July 14, 2000 and recorded with said Deeds at Book 3490, Page 440, as amended by that Restated Declaration of Open Space Covenants, Restrictions and Easements by instrument dated December 22,2000 and recorded at Book 3530, Page 1419.

6. First Amendment to Declaration of Open Space Covenants, Restrictions and Easements of Fletcher Coiner Estates Windham, New Hampshire, dated January 29, 2001 and recorded in the Rockingham County Registry of Deeds at Book 3538, Page 1887.

7. Typical and customary easements to be given to the local electric, gas, telephone and cable company for provision of above ground or below ground easements for telephone lines, electric lines, cable lines, and gas lines as Grantor shall in its sole discretion deem to be necessary to service the subdivision.

8. Reserving to the Grantors, their heirs, successors and assigns, the fee in Fletcher Road and Corliss Road, but granting to the Grantees, their heirs, successors and assigns, the right to pass and repass and to use said Fletcher Road and Corliss Road as public ways as public "ways axe used in the Town of Windham, together with all others entitled thereto.

9. Subject to easements, facts, issues and notations as shown on Plan No. D-28411.

      Meaning and intending to describe and convey the same premises conveyed to Stephen W. Stanley and Terri L. Qualters by virtue of a deed from Hills-Mor Construction Co., Inc. dated May 24, 2002 and recorded in the Rockingham County Registry of Deeds at book 3775 and page 0434.

      We, the grantor(s) herein hereby release all rights of homestead in the above described premises.

BK 5226 PG 1161

Executed this 30th day of June, 2011.

_Stephen Stanley_
Stephen W. Stanley

_Terri L. Stanley_
Terri L. Stanley (f/k/a Terri L. Qualters)

State of New Hampshire
County of Rockingham          June 30, 2011

Then personally appeared before me on this 30th day of June, 2011, the said Stephen W. Stanley and Terri L. Stanley (f/k/a Terri L. Qualters) and acknowledged the foregoing to be their voluntary act and deed.

Notary Public/Justice of the Peace
Commission expiration:   12·18·13



RE: 2011-13212                                          Page 3 of 3

| Property Location | 9 CORLISS RD | | | | Map ID | 25/ R/ 890 / | | | Bldg Name | FLETCHER CORNER | | State Use 1010 |
| Vision ID | 5235 | Account # | 22171 | | | Bldg # | 1 | | Sec# 1 of 1 | Card# 1 of 1 | | Print Date: 11-20-2019 11:43:23 |

# VISION

## CURRENT OWNER

ALRAI, IMRAN RAHIM &
ALRAI, SAIMA
9 CORLISS RD

WINDHAM        NH        03087

| TOPO | UTILITIES | STRT/ROAD | LOCATION |
|---|---|---|---|
| 4 Rolling | 6 Septic | 1 Paved | 3 Rural |
| | 7 Common Well | | |

### SUPPLEMENTAL DATA

Alt Prcl ID
Census 10        022:
NH Class         RLB:
Tax District     N/A:

Land Zone
Land Zone     RD:
2nd Tax Di   N/A:
Watershed

GIS ID        25-R-890        Assoc Pid#

### CURRENT ASSESSMENT

| Description | Code | Assessed |
|---|---|---|
| RES BLDG | 1010 | 389,300 |
| RES LAND | 1010 | 156,900 |
| RES OBS | 1010 | 3,300 |
| | Total | 549,500 |

2237

WINDHAM, NH

### PREVIOUS ASSESSMENTS (HISTORY)

| Year | Code | Assessed | Year | Code | Assessed | Year | Code | Assessed |
|---|---|---|---|---|---|---|---|---|
| 2019 | 1010 | 389,300 | 2018 | 1010 | 389,300 | 2017 | 1010 | 389,300 |
| | 1010 | 156,900 | | 1010 | 156,900 | | 1010 | 156,900 |
| | 1010 | 3,300 | | 1010 | 3,300 | | 1010 | 3,300 |
| | Total | 549,500 | | Total | 549,500 | | Total | 549,500 |

This signature acknowledges a visit by a Data Collector or Assessor

### RECORD OF OWNERSHIP

| | BK-VOL/PAGE | SALE DATE | Q/U | V/I | SALE PRICE | VC |
|---|---|---|---|---|---|---|
| ALRAI, IMRAN RAHIM & | 5226 | 1159 | 07-01-2011 | Q | I | 425,000 | 00 |
| QUALTERS, TERRI L & | 3775 | 0434 | 05-24-2001 | Q | I | 378,000 | 1 |
| HILLS-MCR CONSTRUCTION CO INC | 3538 | 2208 | 01-30-2001 | Q | V | 702,000 | 1 |
| MESITI/THOMAS MBHD EST, LLC | 3493 | 0664 | 08-01-2000 | U | V | 0 | 1 |

### APPRAISED VALUE SUMMARY

| | |
|---|---|
| Appraised Bldg. Value (Card) | 387,100 |
| Appraised Xf (B) Value (Bldg) | 2,200 |
| Appraised Ob (B) Value (Bldg) | 3,300 |
| Appraised Land Value (Bldg) | 156,900 |
| Special Land Value | 0 |
| Total Appraised Parcel Value | 549,500 |
| Valuation Method | C |
| Total Appraised Parcel Value | 549,500 |

### EXEMPTIONS

| Year | Code | Description | Amount |
|---|---|---|---|

### OTHER ASSESSMENTS

| Code | Description | Number | Amount | Comm Int |
|---|---|---|---|---|

#### ASSESSING NEIGHBORHOOD

| Nbhd | Nbhd Name | B | | |
|---|---|---|---|---|
| 13 | Windham-B | | | |

Total        0.00

### NOTES

6-15 "SEND LETTER"
REAR DORMER
9/15 ADD FB2
05-16 ADJ DATA

NEW LOT TY01; ML=25-R-802

602, 630 & 675 "FLETCHER
CORNER ESTATES" - 50 LOT

### VISIT/CHANGE HISTORY

| Date | Id | Type | Is | Cd | Purpost/Result |
|---|---|---|---|---|---|
| 05-13-2016 | STM | | | 19 | Permit Review- Entry |
| 09-28-2015 | KH | | | 41 | Hearing Change |
| 06-03-2015 | JG | | | 01 | Measur+1Visit |
| 09-04-2015 | RN | 02 | | 18 | Exterior Scan - 3D |
| 06-29-2004 | MF | | | 10 | Measu/Note to inspect |

### BUILDING PERMIT RECORD

| Permit Id | Issue Date | Type | Description | Amount | Insp Date | % Comp | Date Comp | Comments |
|---|---|---|---|---|---|---|---|---|
| 14.224 | 08-26-2014 | AD | Addition | 35,500 | 06-03-2015 | 100 | 04-01-2015 | CONSTRUCTION OF AN 18X |
| 14.182 | 08-01-2014 | AD | Addition | 7,400 | 05-13-2016 | 100 | | CONSTRUCT A 16X20 STOR |
| 13.254 | 10-22-2013 | AD | Addition | 55,000 | 09-04-2014 | 100 | 04-01-2015 | 24X37 SHED DORMER |
| 02.390 | 12-27-2002 | NC | New Construct | 0 | 04-01-2003 | 100 | 04-01-2003 | SFD 2692SF; C/O 5/10/02 MESITI CONST |

### LAND LINE VALUATION SECTION

| B | Use Code | Description | Zone | Land Type | Land Units | Unit Price | Size Adj | Site Index | Cond. | Nbhd. | Nbhd. Adj | Notes | Location Adjustment | Adj Unit P | Land Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1010 | SINGLE FAMILY | RD | | 0.710 | AC | 160,000.00 | 1.25528 | 1 | 1.00 | 60 | 1.100 | OS | 1.0000 | 220,928.0 | 156,900 |

Total Card Land Units        0.7100        AC        Parcel Total Land Area 0.7100        Total Land Value        156,900

Property Location: 9 CORLISS RD
Vision ID: 5235 Account #: 22171 Map ID: 25/ R/ 890/ / Bldg #: 1
Bldg Name: FLETCHER CORNER State Use: 1010
Sec # 1 of 1 Card # 1 of 1 Print Date: 11-20-2019 11:43:23



## CONSTRUCTION DETAIL

| Element | Cd | Description |
|---|---|---|
| Style: | 03 | Colonial |
| Model | 01 | Residential |
| Grade: | 07 | B+ |
| Stories: | 2.5 | |
| Occupancy | 1 | |
| Exterior Wall 1 | 25 | Vinyl Siding |
| Exterior Wall 2 | | |
| Roof Structure: | 03 | Gable/Hip |
| Roof Cover | 03 | Asph/F Gls/Cmp |
| Interior Wall 1 | 05 | Drywall/Sheet |
| Interior Wall 2 | | |
| Interior Flr 1 | 14 | Carpet |
| Interior Flr 2 | 12 | Hardwood |
| Heat Fuel | 02 | Oil |
| Heat Type: | 04 | Forced Air-Duc |
| AC Type: | 01 | None |
| Total Bedrooms | 04 | 4 Bedrooms |
| Total Bthrms: | 3 | |
| Total Half Baths | 1 | |
| Total Xtra Fixtrs | | |
| Total Rooms: | 8 | 8 Rooms |
| Bath Style: | 02 | Average |
| Kitchen Style: | 02 | Standard |
| Field 101 | 1 | |
| Field 102 | | |
| Field 103 | | |
| Field 104 | | |
| Field 105 | | |
| Field 106 | | |
| Field 107 | | |
| Field 108 | | |
| Field 109 | | |
| Field 110 | | |

## CONSTRUCTION DETAIL (CONTINUED)

| Element | Cd | Description |
|---|---|---|
| Field 109 | | |
| Field 110 | | |
| Field 111 | | |

### CONDO DATA

| Element | Cd | Description |
|---|---|---|
| Parcel Id | | |
| Condo Flr | | |
| Condo Unit | | |

| Adjust Type | Code | Description | Factor% |
|---|---|---|---|

## COST / MARKET VALUATION

| | |
|---|---|
| Building Value New | 434,959 |
| Base Rate | 75.00 |
| Eff Base Rate | 186,432 |
| Net Other Adj | 27,000 |
| Year Built | 2003 |
| Effective Year Built | 2004 |
| Depreciation Code | A |
| Remodel Rating | |
| Year Remodeled | |
| Depreciation % | 11 |
| Functional Obsol | 0 |
| External Obsol | 0 |
| Trend Factor | 1.000 |
| Condition | |
| Condition % | |
| Percent Good | 89 |
| Cns Sect Rcnld | 387,100 |
| Dep % Ovr | |
| Dep Ovr Comment | |
| Misc Imp Ovr | |
| Misc Imp Ovr Comment | |
| Cost to Cure Ovr | |
| Cost to Cure Ovr Comment | |

## OB - OUTBUILDING & YARD ITEMS(L) / XF - BUILDING EXTRA FEATURES(B)

| Code | Description | L/B | Units | Unit Price | Yr Blt | Cond. Cd | %Gd | Grade | Grade Adj. | Unit Cost | Undeprec Value | Appr. Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FPL1 | BR/ST FIREP | B | 1 | 2500.00 | 2004 | | 89 | | 0.00 | | | 2,200 |
| SHD1 | SHED FRAME | L | 1 | 13.00 | 2015 | | 75 | | 0.00 | | | 3,300 |
| RPV2 | PAVE DR - M | L | 340 | 0.00 | 2003 | | 100 | | 0.00 | | | 0 |

## BUILDING SUB-AREA SUMMARY SECTION

| Code | Description | Living Area | Floor Area | Eff Area | Unit Cost | Undeprec Value |
|---|---|---|---|---|---|---|
| BAS | First Floor | 2,077 | 2,077 | 2,077 | 89.76 | 186,432 |
| FAT | Attic, Finished | | 120 | 120 | 18.01 | 10,771 |
| FB2 | 1/2 Finished Basement | 0 | 1,119 | 336 | 26.95 | 30,169 |
| FGR | Garage, Framed | 0 | 598 | 239 | 35.87 | 21,453 |
| FHS | Half Story, Finished | 559 | 559 | 559 | 44.84 | 50,176 |
| FOP | Porch, Open, Finished | | 148 | 10 | 18.70 | 898 |
| FUS | Upper Story, Finished | 1,167 | 1,167 | 1,167 | 89.76 | 104,750 |
| WDK | Deck, Wood | 0 | 360 | 36 | 8.98 | 3,231 |
| | Ttl Gross Liv / Lease Area | 3,923 | 7,086 | 4,544 | | 407,870 |

# C·A·T·I·C®

*101 Corporate Place, Rocky Hill, CT 06067 • (860) 257-0606*

OP **3021594**

# *Owner Title Insurance Policy*
## *EXPANDED Protection Owner Policy*
## *One-to-Four Family Residences*

**OWNER'S COVERAGE STATEMENT**

This Policy insures your title to the land described in Schedule A—if that land is a one-to-four family residential lot or condominium unit.

Your insurance as described in this Coverage Statement, is effective on the Policy Date shown in Schedule A.

Your insurance is limited by the following:
- Exclusions on Page 2
- Exceptions in Schedule B
- Conditions on Pages 2 and 3

We insure you against actual loss resulting from:
- any title risks covered by this Policy—up to the Policy Amount and
- any costs, attorneys' fees and expenses we have to pay under this policy

**COVERED TITLE RISKS**

This Policy covers the following title risks if they affect your title on the Policy Date or, to the extent expressly stated below, if they affect your title after the Policy Date. Some of these Covered Title Risks will be subject to a separate deductible amount and to maximum dollar limits which are less than the Policy Amount when expressly stated below. These Covered Title Risks are:

1. Someone else owns an interest in your title.
2. A document is not properly signed, sealed, acknowledged or delivered.
3. a. Forgery, fraud, duress, incompetency, incapacity or impersonation;
   b. Forgery after the Policy Date of an instrument by which someone else claims to own an interest in or have a lien on your title.
4. Defective recording of any document.
5. You do not have any legal right of pedestrian and vehicular access to and from the land.
6. There are restrictive covenants limiting your use of the land.
7. There is a lien on your title because of:
   a. a mortgage or deed of trust
   b. a judgment, tax or special assessment
   c. a charge by a homeowner's or condominium association
8. There are liens on your title, arising now or later, for labor and material furnished before the Policy Date—unless you agreed to pay for the labor and material.
9. Others have rights arising out of leases, contracts or options.
10. Someone else has an easement on your land.
11. Your title is unmarketable, which allows another person to refuse to perform a contract to purchase, to lease or to make a mortgage loan.
12. You are forced to remove your existing structure—other than a boundary wall or fence—because:
    a. it extends on to adjoining land or on to any easement
    b. it violates a restriction in Schedule B
    c. it violates an existing zoning law
    d. any portion of it was built without obtaining a building permit from the proper government office or agency. Your insurance under this item 12d is limited to your actual loss in excess of a deductible amount equal to one percent (1%) of the Policy Amount and to our maximum dollar limit of liability of $25,000.
13. You cannot use the land because use as a single-family residence violates a restriction shown in Schedule B or an existing zoning law.
14. Someone else seeks to take away your title because of a violation of a restriction shown in Schedule B which happened before you became the owner of your land.
15. Someone else seeks to enforce a restriction shown in Schedule B because of a violation on your land, other than a violation already covered by Items 12b, 13 or 14, which happened before you became the owner of your land. Your insurance under this Item 15 is limited to your actual loss in excess of a deductible amount equal to one percent (1%) of the Policy Amount, but not to exceed the Policy Amount.
16. Someone else refuses to perform a contract to purchase, to lease or to make a mortgage loan because of any violation on your land of any restrictions shown in Schedule B which happened before you became the owner of your land.
17. Someone else, after the Policy Date, builds a structure—other than a boundary wall or fence—which encroaches on to your land.
18. You cannot obtain a building permit for your land, or someone else refuses to perform a contract to purchase, to lease or to make a mortgage loan on your land, because at Policy Date it violates an existing subdivision law. Your insurance under this Item 18 is limited to your actual loss in excess of a deductible amount equal to one percent (1%) of the Policy Amount and to our maximum dollar limit of liability of $10,000.
19. Your existing structure, or any part of it, or a structure you may build after the Policy Date as a replacement of or modification to the existing structure, or any part of it, is damaged because another person uses the surface of your land for the extraction or development of minerals owned by them.
20. Other defects, liens or encumbrances.

**COMPANY'S DUTY TO DEFEND AGAINST COURT CASES**

We will defend your title in any court case as to that part of the case that is based on the Covered Title Risk insured against by this Policy. We will pay the costs, attorneys' fees and expenses we incur in that defense.

We can end this duty to defend your title by exercising any of our options listed in Item 4 of the Conditions.

This Policy is not complete without Schedules A & B.

*Connecticut Attorneys Title Insurance Company*

By

RICHARD J. PATTERSON
PRESIDENT



CATIC FORM EOP-J-C (Rev. 07-05) (Includes ALTA Residential Owner Coverage 6-1-87)

and
• your failure affects our ability to dispose of or to defend you; and only those costs, attorneys' fees and expenses incurred up

CATIC FORM – NHEOPI

## EXPANDED COVERAGE OWNER POLICY

# C A T I C®

### *Connecticut Attorneys Title Insurance Company*

| Policy No. | Amount of Insurance | Date of Policy |
|---|---|---|
| OP 3021594 | $425,000.00 | July 1, 2011 at 9:30 AM |
| | Agent Name | Agent No. |
| | Summit Title Services Corp | |

## EXPANDED COVERAGE OWNER TITLE INSURANCE POLICY
## SCHEDULE A

1. Name of Insured:
   Imran Rahim Alrai and Saima Alrai

2. Title to the estate or interest in the land is vested in Fee Simple in:
   Imran Rahim Alrai and Saima Alrai

3. The Insured Mortgage and its assignments, if any, are described as follows:
   A mortgage from Imran Rahim Alrai and Saima Alrai to Pentucket Bank in the original principal amount of $403,750.00, dated June 30, 2011 and recorded in the Rockingham County Registry of Deeds on July 1, 2011 at 9:31 AM as instrument number 027907 in Book 5226, Page 1162.

4. The land referred to in this policy is described as:

   Street Address: 9 Corliss Road
   Lot Number/Unit Number: 9
   Subdivision/Condominium: Fletcher Corner Estates
   City/Town: Windham
   County:      Rockingham
   State/Zip: New Hampshire, 03087

   A copy of the description of said Land is attached hereto as Exhibit A.

Countersigned and validated:

By _____
Signature of Issuing Attorney

Summit Title Services Corp
Please Print or Type Name of Issuing Attorney

Policy not valid unless Schedule B - Part I attached.

CATIC FORM – NHEOP – Page 2

## EXPANDED COVERAGE OWNER POLICY

# C        A        T        I        C®

*Connecticut Attorneys Title Insurance Company*

_____ Policy _____ **EXPANDED COVERAGE OWNER TITLE INSURANCE POLICY**

OP 3021594                          **SCHEDULE B – PART I**
**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

General Exceptions:

1.   Rights of persons in possession other than the insured, which are not shown by the public records.

2.   Any easements or claims of easements not shown by the public records, boundary line disputes, overlaps, encroachments, title to filled lands (if any) and all other facts which an accurate survey and inspection of the land would disclose and which are not shown by the public records.

3.   Unrecorded mechanics' liens.

Exceptions 1, 2 and 3 are not deleted from the Owner Policy unless specifically deleted in Special Exceptions.

Special Exceptions (if none, so state)

4.   Liens for real estate taxes, municipal and private association assessments which become due and payable after the date of the policy.  This policy insures that taxes are paid through the date of closing.

5.   IF THE INSURED PREMISES IS A CONDOMINIUM UNIT:  Covenants, conditions, restrictions, reservations, easements, liens for assessments, options, power of attorney, and limitations on title, created by the laws of the State of New Hampshire or set forth in the Master of Deed or Declaration of Condominium, in the related By-Laws, in the Declaration of Trust, or Site Plans and Floor Plans as duly recorded in the appropriate land records office and as the same may have been lawfully amended, and in any instrument creating the estate or interest insured by this policy.

6.   Easement granted to Public Service Company of New Hampshire and New England Telephone and Telegraph Company by instrument recorded with the Rockingham County Registry of Deeds at Book 2864, Page 882.

7.   A 25 foot Roadway Easement, 25 foot Northerly of and parallel with the center line of the former dark entry school house road as described on Plan #D-20823.

8.   Slope Easement for the benefit of the adjoining Lot 25-R-801, and the Southeasterly: corner of said Lot 25-R-801 recorded with said Deeds at Book 2864, Page 2749 and shown on Plan #D-20823.

If Schedule B Part II Attached, Check Here ____

9. Wetlands Permit dated December 15, 1999 and recorded with said Deeds at Book 3490, Page 39. There shall be no further alteration of Wetlands for lot development, driveways, culverts, or for septic setback. This condition shall be restated in the deed for any subsequent conveyance for each of the lots set forth herein.

10. Declaration of Open Spare Covenants, Restrictions and Easements by instrument dated July 14,2000 and recorded with said Deeds at Book 3490, Page 440, as amended by that Restated Declaration of Open Space Covenants, Restrictions and Easements by instrument dated December 22,2000 and recorded at Book 3530, Page 1419.

11. First Amendment to Declaration of Open Space Covenants, Restrictions and Easements of Fletcher Coiner Estates Windham, New Hampshire, dated January 29,2001 and recorded in the Rockingham County Registry of Deeds at Book 3538, Page 1887.

12. Typical and customary easements to be given to the local electric, gas, telephone and cable company for provision of above ground or below ground easements for telephone lines, electric lines, cable lines, and gas lines as Grantor shall in its sole discretion deem to be necessary to service the subdivision.

13. Reserving to the Grantors, their heirs, successors and assigns, the fee in Fletcher Road and Corliss Road, but granting to the Grantees, their heirs, successors and assigns, the right to pass and repass and to use said Fletcher Road and Corliss Road as public ways as public "ways axe used in the Town of Windham, together with all others entitled thereto.

14. Subject to easements, facts, issues and notations as shown on Plan No. D-28411.

If Schedule B Part II Attached, Check Here ____

CATIC FORM – OP Alta Rev. 6-17-06, Exhibit A

**ALTA OWNER POLICY (6-17-06)**

# C A T I C®

OP 3021594

## EXPANDED COVERAGE OWNER TITLE INSURANCE POLICY

### EXHIBIT A

That certain lot of land, with the buildings thereon, situated in Windham, Rockingham County, New Hampshire, as follows:

Lot No. 25-R-890 as shown on that Plan, defined as "Town of Windham, NH, OWNER: Henry & Theresa Rombly & Marblehead Landholding LLC, PO Box 642, Windham, NH 03087, scale 1" = 100', date: June 1999 Subdivision Plan, Tax Map 25-R-Lots 602, 630 and 675, Title: "Fletcher Corner Estates" consisting of 30 sheets, Edward N. Herbert Assoc., Inc. Land Surveying/Civil Engineering, One Frost Road, Windham, NH 03087"; recorded in the Rockingham County Registry of Deeds as Plan No. D-28411, to which Plan reference may be made for a more particular description.

Also conveying with each lot, an undivided interest in the Open Space Parcels shown on said Plan. The Grantee covenants that each undivided interest conveyed shall not be conveyed separately from each of the lots herein conveyed and that any further conveyance of any lot herein conveyed shall include an undivided interest so that each grantee, successor or assign shall be required to retain an ownership interest in the Open Space along with ownership of any of within conveyed lots at all times.

You must cooperate with us in handling any claim or court case and give us all relevant information.

We are required to repay you only for those settlement costs, attorneys' fees and expenses that we approve in advance.

When we defend your title, we have a right to choose the attorney. We can appeal any decision to the highest court. We do not have to pay your claim until your case is finally decided.

## 6. LIMITATION OF THE COMPANY'S LIABILITY

a. After subtracting any deductible amount that applies, we will pay up to (i) your actual loss, (ii) the amount of insurance specified in the given item as the limit for the particular Covered title Risk for claims based upon the coverage described in Items 12d, 15 and 18 of Covered Title Risks, or (iii) the Policy Amount in force when the claim is made—whichever is less.

b. If we remove the claim against your title within a reasonable time after receiving notice of it, we will have no further liability for it.

If you cannot use any of your land because of a claim against your title, and you rent reasonable substitute land or facilities, we will repay you for your actual rent until:

- the cause of the claim is removed
  or
- we settle your claim. In the event of a claim based upon the coverage described in Items 12d and 18 of Covered Title Risks, we will be deemed to have "settled your claim" for purposes of this provision obligating us to pay you for your actual rent upon payment to you of the amount of insurance specified in the given item as the limit for the particular Covered Title Risk.

c. The Policy Amount will be reduced by all payments made under this Policy—except for costs, attorneys' fees and expenses. All payments made under this Policy for claims based upon the coverage described in Items 12d and 18 of Covered Title Risks shall also reduce the amount of insurance specified in the given item as the limit for the particular covered Title Risk—except for costs, attorneys' fees and expenses.

d. The Policy Amount will be reduced by any amount we pay to our insured holder of any mortgage shown in this Policy or a later mortgage given by you.

e. If you do anything to affect any right of recovery you may have, we can subtract from our liability the amount by which you reduced the value of that right.

## 7. TRANSFER OF YOUR RIGHTS

When we settle a claim, we have all the rights you had against any person or property related to the claim. You must transfer these rights to us when we ask and you must not do anything to affect these rights. You must let us use your name in enforcing these rights.

We will not be liable to you if we do not pursue these rights or if we do not recover any amount that might be recoverable.

With the money we recover from enforcing these rights, we will pay whatever part of your loss we have not paid.  We have a right to keep what is left.

## 8. ARBITRATION

If it is permitted in your state, you or the Company may demand arbitration.

The arbitration shall be binding on both you and the Company. The arbitration shall decide any matter in dispute between you and the Company.  The arbitration award may:

- include attorneys' fees if allowed by state law
- be entered as a judgment in the proper court.

The arbitration shall be under the Title Insurance Arbitration Rules of the American Arbitration Association. You may choose current Rules or Rules in existence on Policy Date.

The law used in the arbitration is the law of the place where the property is located.

You can get a copy of the Rules from the Company.

## 9. OUR LIABILITY IS LIMITED TO THIS POLICY

This Policy, plus any endorsements, is the entire contract between you and the Company.  Any claim you make against us must be made under this Policy and is subject to its terms.

## 10. GRADUATED LIABILITY COVERAGE

The Policy Amount stated in Schedule A will increase by five percent (5%), of the original Policy Amount, per year for the first five years immediately following the Policy Date to a maximum Policy Amount of one hundred twenty-five percent (125%) of the original Policy Amount.  This increase will happen in each of these years on the anniversary of the Policy Date.

BK 5226 PG 1180

# 1-4 FAMILY RIDER
**(Assignment of Rents)**

THIS 1-4 FAMILY RIDER is made this 30th day of **June, 2011**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **Pentucket Bank** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**9 Corliss Road**
**Windham, NH  03087**
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.   USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.   SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.   RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E.   "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F.   BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**Form 3170 1/01**

**MULTISTATE**
ITEM 1790L1
(042009)

**GreatDocs®**
*(Page 1 of 3)*

**G.  ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.  ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.  CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3170 1/01**

MULTISTATE
ITEM 1790L2
(042009)

*GreatDocs®*
*(Page 2 of 3)*

BK 5226 PG 1182

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this 1-4 Family Rider.

_____ (Seal)
Imran Rahim Alrai                     -Borrower

_____ (Seal)
Saima Alrai                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**Form 3170 1/01**

**MULTISTATE**
ITEM 1790L3
(042009)

**GreatDocs®**
*(Page 3 of 3)*

**Book:5957  Page:118**

US Attorney's office
Env.

# 18043945      10/26/2018 11:08:27 AM
Book 5957 Page 118          Page 1 of 3
Register of Deeds, Rockingham County

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

*Cathy Ann Stacey*

| | | |
|---|---|---|
| United States of America, | ) | RECORDING          18.00 |
| | ) | SURCHARGE           2.00 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 18-cv-978 |
| | ) | |
| Land and buildings located at 21 Hampshire Road, | ) | |
| #115, Methuen, MA, with all appurtenances and | ) | |
| improvements thereon, owned by | ) | |
| Imran Rahim Alrai and Saima Alrai; and | ) | |
| | ) | |
| Land and buildings located at 9 Corliss Road, Windham, | ) | |
| NH, with all appurtenances and improvements thereon, | ) | |
| owned by Imran Rahim Alrai and Saima Alrai, et al, | ) | |
| | ) | |
| Defendants *in rem.* | ) | |
| | ) | |

## NOTICE OF LIS PENDENS

The United States of America, plaintiff, hereby gives notice that the foregoing action has

been commenced against the defendant real property by the filing of a Verified Complaint For

Forfeiture In Rem with the United States District Court for the District of New Hampshire and

such action is pending in the United States District Court for the District of New Hampshire

between the above-named parties.  For Title to the property, see Book 5226, Page 1159 of the

Rockingham County Registry of Deeds, in particular, a Warranty Deed dated June 30, 2011 from

Stephen W. Stanley and Terri L. Stanley, conveying the property to Imran Rahim Alrai and

Saima Alrai, husband and wife, as joint tenants with rights of survivorship, with warranty

covenants.

Any real property which constitutes, or is derived from, proceeds traceable to theft

concerning programs receiving Federal funds, in violation of 18 U.S.C. § 666, or proceeds

traceable to wire fraud, in violation of 18 U.S.C. § 1343, and is liable to condemnation and

1

**Book: 5957 Page: 119**

forfeiture to the United States for its use, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

The property subject to this Lis Pendens is more fully described as follows:

That certain lot of land, with the buildings thereon, situated in Windham, Rockingham, County, New Hampshire, as follows:

Lot No. 25-R-890 as shown on that Plan, defined as "Town of Windham, NH, OWNER: Henry & Theresa Rombly & Marblehead Landholding LLC, PO Box 642, Windham, NH 03087, scale 1" = 100', date: June 1999 Subdivision Plan, Tax Map 25-R-Lots 602, 630 and 675, Title: "Fletcher Comer Estates" consisting of 30 sheets, Edward N. Herbert Assoc., Inc. Land Surveying/Civil Engineering, One Frost Road, Windham, NH 03087"; recorded in the Rockingham County Registry of Deeds as Plan No. D-28411, to which Plan reference may be made for a more particular description.

Also conveying with each lot, an undivided interest in the Open Space Parcels shown on said Plan. The Grantee covenants that each undivided interest conveyed shall not be conveyed separately from each of the lots herein conveyed and that any further conveyance of any lot herein conveyed shall include an undivided interest so that each grantee, successor or assign shall be required to retain an ownership interest in the Open Space along with ownership of any of within conveyed lots and all times.

Subject to the following:

1. Easement granted to Public Service Company of New Hampshire and New England Telephone and Telegraph Company by instrument recorded with the Rockingham County Registry of Deeds at Book 2864, Page 882.
2. A 25 foot Roadway Easement, 25 foot Northerly of and parallel with the center line of the former dark entry school house road as described on Plan #D-20823.
3. Slope Easement for the benefit of the adjoining Lot 25-R-801, and the Southeasterly corner of said Lot 25-R-801 recorded with said Deeds at Book 2864, Page 2749 and shown on Plan #D-20823.
4. Wetlands Permit dated December 15, 1999 and recorded with said Deeds at book 3490, Page 39. There shall be no further alteration of Wetlands for lot development, driveways, culverts, or for septic setback. This condition shall be restated in the deed for any subsequent conveyance for each of the lots set forth herein.
5. Declaration of Open Spare Covenants, Restrictions and Easements by instrument dated July 14, 2000 and recorded with said Deeds at Book 3490, Page 440, as amended by that Restated Declaration of Open Space Covenants, Restrictions and Easements by instrument dated December 22, 2000 and recorded at Book 3530, Page 1419.
6. First Amendment to Declaration of Open Space Covenants, Restrictions and Easements of Fletcher Coiner Estates Windham, New Hampshire, dated January 29, 2001 and recorded in the Rockingham County Registry of Deeds at Book 3538, Page 1887.
7. Typical and customary easements to be given to the local electric, gas, telephone and

2

cable company for provision of above ground or below ground easements for telephone lines, electric lines, cable lines, and gas lines as Grantor shall in its sole discretion deem to be necessary to service the subdivision.

8. Reserving to the Grantors, their heirs, successors and assigns, the fee in Fletcher Road and Corliss Road, but granting to the Grantees, their heirs, successors and assigns, the right to pass and repass and to use said Fletcher Road and Corliss Road as public ways as public "ways axe used in the Town of Windham, together with all others entitled thereto.

9. Subject to easements, facts, issues and notations as shown on Plan No. D-28411.

Property address: 9 Corliss Road, Windham, New Hampshire 03087.

For further information concerning this action, reference may be made to the records of the Clerk of Court for the United States District Court of New Hampshire, or inquiry made to the same at the Warren B. Rudman Federal Building, 55 Pleasant Street, Concord, New Hampshire 03301.

SCOTT W. MURRAY
UNITED STATES ATTORNEY
District of New Hampshire
53 Pleasant Street, 4th Floor
Concord, NH 03301

Dated:  October 25, 2018          By:  *Robert J. Rabuck*
Robert J. Rabuck
Assistant United States Attorney
603-225-1552

STATE OF NEW HAMPSHIRE
MERRIMACK, SS

Then personally appeared the above-named Robert J. Rabuck, Assistant United States Attorney, and acknowledged the foregoing to be true to the best of his knowledge, information and belief, and to be his free act and deed on behalf of the United States of America.

Subscribed to and sworn before me this 25th day of October 2018.

Francine Doucette Conrad
Notary Public
My commission expires:   April 23, 2019

3

# APPENDIX A-2
# 21 Hampshire Drive, #115, Methuen, MA

**BK 10333 PG 225**

## CONDOMINIUM UNIT DEED

## SPICKET COMMONS CONDOMINIUM

GRANTOR:   El-Ad Spicket Commons LLC., a Delaware Limited Liability Company registered to do business in the Commonwealth of Massachusetts.

For consideration of Two Hundred Forty-Seven Thousand Two Hundred and 00/100 Dollars ($247,200.00)

GRANTS TO:   Imran R. Alrai and Saima Alrai, husband and wife as tenants by the entirety, of 21 Hampshire Road, #115, Methuen, Massachusetts ("Grantee")

With quitclaim covenants, Unit No. 21-115 of the Spicket Commons Condominium, created by Master Deed dated June 9, 2005, and recorded with the Essex County Northern District Registry of Deeds on June 20, 2005, in Book 9580, Page 154.

The address of the Unit is 21 Hampshire Road, Unit 115, Methuen, Massachusetts 01844.

The unit conveyed is laid out as shown on a plan filed herewith, which plan is a copy of a portion of the plans filed with said Master Deed, and to which is affixed a verified statement in the form provided in M.G.L. Ch. 183A, §9.  It is subject to and with the benefit of the obligations, restrictions; rights and liability contained in General Laws Chapter 183A, the Master Deed and the By-Laws filed therewith, as the same may be amended from time to time.

The Condominium and each of the Units are intended for residential purposes and other uses permitted by the applicable Zoning Ordinances and as set forth in the Master Deed.

The undivided percentage interest of the unit conveyed hereunder in the common areas and facilities is .7405%.

This unit is conveyed subject to and with the benefit of all covenants, easements, agreements, restrictions, reservations and other matters contained in the aforesaid Master Deed and the By-Laws of the Spicket Commons Condominium Association, Inc., dated June 14, 2005, and recorded with the Essex County Northern District Registry of Deeds on June 20, 2005, in Book 9580, Page 202.

This unit is also conveyed subject to and with the benefit of all other covenants, easements, agreements and other matters of record, insofar as the same are now in force and applicable.



BK 10333 PG 226

It is intended that each and all of the covenants and agreements in this Deed to be performed by or on the part of Grantor or Grantee shall run with the land and shall be binding upon Grantor and Grantee and their respective legal representatives, successors and assigns.

EXECUTED this 21ST day of July, 2006.

EL-AD SPICKET COMMONS LLC

By: _____
      Ram Rosen

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

    On this 21ST day of July, 2006, before me, the undersigned notary public, personally appeared Ram Rosen, proved to me through satisfactory evidence of identification, being (check whichever applies):   driver's license or other state or federal governmental document bearing a photographic image,  oath or affirmation of a credible witness known to me who knows the above signatory, or  my own personal knowledge of the identity of the signatory, to be the person whose name is signed above, and acknowledged the foregoing to be signed by him/her voluntarily for its stated purpose as an authorized signatory of El-Ad Spicket Commons LLC.

_____
Notary Public
My Commission Expires: March 21, 2008
Print Notary Public's Name: Margaret Razzaboni
Qualified in the Commonwealth/State of MA

Margaret Razzaboni
Notary Public
My Commission Expires
March 21, 2008



3/31/2020                                        Unofficial Property Record Card

## Unofficial Property Record Card - Methuen, MA

### General Property Data

Parcel ID  510-124-7-21-115
Prior Parcel ID  --
Property Owner  ALRAI IMRAN R
ALRAI SAIMA
Mailing Address 9 CORLISS RD

City WINDHAM

Mailing State  NH          Zip 03087

ParcelZoning BL

Account Number 16863

Property Location 21 HAMPSHIRE RD
Property Use Condo
Most Recent Sale Date 8/9/2006
Legal Reference 10333-225
Grantor EL-AD SPICKET COMMONS LLC,
Sale Price 247,200
Land Area 0.000 acres

### Current Property Assessment

Card 1 Value  Building Value 232,600       Xtra Features Value 0       Land Value 0       Total Value 232,600

### Building Description

Building Style Condo Garden
# of Living Units 1
Year Built 2002
Building Grade Average
Building Condition Avg-Good
Finished Area (SF) 1145
Number Rooms 4
# of 3/4 Baths 0

Foundation Type Slab
Frame Type Wood
Roof Structure Gable
Roof Cover Asphalt Shgl
Siding Vinyl
Interior Walls Drywall
# of Bedrooms 1
# of 1/2 Baths 0

Flooring Type Carpet
Basement Floor N/A
Heating Type Forced H/Air
Heating Fuel Gas
Air Conditioning 100%
# of Bsmt Garages 0
# of Full Baths 1
# of Other Fixtures 0

### Legal Description

Master Deed Book 9580 Page 154

### Narrative Description of Property

This property contains 0.000 acres of land mainly classified as Condo with a(n) Condo Garden style building, built about 2002 , having Vinyl exterior and Asphalt Shgl roof cover, with 1 unit(s), 4 room(s), 1 bedroom(s), 1 bath(s), 0 half bath(s).

### Property Images



Disclaimer: This information is believed to be correct but is subject to change and is not warranteed.

# APPENDIX A-3
# 31 Lowell Road, Unit 1, Windham, NH

BK 5502 PG 2104

MAIL TO

Return to:
31 Lowell Road Realty Trust
31 Lowell Road, Unit 1
Windham, NH 03087

 

## WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS,

That EDWARD L. YOURTEE and H. ELAINE MACEWEN YOURTEE, CO-TRUSTEES of the MAJOEL REALTY TRUST, under Declaration of Trust dated March 20, 2003, having a mailing address of 45 Sharon Road, Windham, New Hampshire 03087,

for consideration paid, grant(s) to

MUNAWAR CHAUDHARY, TRUSTEE of the 31 LOWELL ROAD REALTY TRUST u/d/t dated November 27, 2013, having a mailing address of 300 Brickstone Square, Suite 201, Andover, Massachusetts 01810,

with WARRANTY COVENANTS

One unit in Cobbetts Office Condominium, located at 31 Lowell Road, Windham, County of Rockingham and State of New Hampshire, and being more particularly bounded and described as follows:

Shown as Unit #1, of Building A, described and identified in the Declaration of Condominium, Cobbetts Office Condominium, dated September 11, 1987 and recorded in the Rockingham County Registry of Deeds at Book 2703, Page 1875, as amended, which Declaration, together with the By-Laws and other appendices thereto, are sometimes hereinafter called "Declaration", and also shown on a certain site plan for Cobbetts Office Condominium, Windham, N.H. and certain floor plans for Cobbetts Office Condominium, Windham, N.H. all recorded in the Rockingham County Registry of Deeds, hereinafter collectively referred to as the "Plans" (D-19524).

Also conveying an undivided Seventeen (17.0%) interest in the Common Area, as defined, described and identified in the Declaration and on the Plans.

Page 1 of 3

2013 DEC 18   PH 1: 38

064757

ROCKINGHAM COUNTY
REGISTRY OF DEEDS

BK 5502 PG 2105

Also conveying the following rights and easements:

1.    Easements in common with others to use the Common Area, excepting Limited
      Common area, as set for in the Declaration.

2.    Non–exclusive easements for structural support and encroachments and for repair,
      and also such other rights and easements as set forth in the Declaration.

This conveyance is subject to the following:

1.    There is excepted from the Unit conveyed herein the Common Area lying within
      said Unit as set forth in the Declaration.

2.    Non-exclusive easements for structural support, encroachments, and repair in
      favor of the owners of other Units in the Condominium as set forth in the
      Declaration, and the other provisions of the Declaration as amended from time to
      time by instruments recorded in the Rockingham County Registry of Deeds,
      which provisions, together with any amendments hereto shall constitute covenants
      running with the land and shall bind any person having at any time any interest or
      estate in said unit, as though such provisions were recited and stipulated at length
      herein.

3.    Other easements, covenants and restrictions of record.

Meaning and intending to convey the same premises conveyed to the within grantor by deed
dated March 20, 2003, and recorded in the Rockingham County Registry of Deeds at Book 3994,
Page 1213.

This is not homestead property.

We, Edward L. Yourtee and H. Elaine Macewen Yourtee, Co-Trustees of the Majoel Realty
Trust certify as follows:

1.    That we are the only Trustees of the Trust; and

2.    That the Trust has not been altered, amended, terminated or revoked; and

3.    That we have been authorized and directed by the holders of 100% of the beneficial
      interest of said Trust to convey the Trust property known and numbered as 31 Lowell
      Road, Unit 1, Windham, Rockingham County, New Hampshire and to execute and
      deliver a Warranty Deed and any documents necessary or incidental to the transfer of
      the property.

4.    Pursuant to RSA 564-A:7, the undersigned Trustee, as Trustee under the said Trust
      does have full and absolute power in said Trust Agreement to convey any interest in

BK 5502 PG 2106

real estate and improvements thereon held in said Trust and no purchaser or third party shall be bound to inquire whether the Trustee has said power or is properly exercising said power or to see to the application of any trust assets paid to the Trustee for a conveyance hereof.

SIGNED this _____ day of December, 2013.

> MAJOEL REALTY TRUST
> By:
>
> _____
> EDWARD L. YOURTEE, CO-TRUSTEE
>
> _____
> H. ELAINE MACEWEN YOURTEE,
> CO-TRUSTEE

STATE OF NEW HAMPSHIRE
COUNTY OF ROCKINGHAM

Dated: December ____, 2013

Then personally appeared EDWARD L. YOURTEE and H. ELAINE MACEWEN YOURTEE, in their capacities as CO-TRUSTEES of the MAJOEL REALTY TRUST, known to me, or satisfactorily proven, to be the persons whose names are subscribed to the foregoing instrument and acknowledged that they executed the same for the purposes therein contained, before me,

_____
Name:
Notary Public/Justice of the Peace
My commission expires: _____

Page 3 of 3

## 31 LOWELL ROAD REALTY TRUST

### AUTHORIZATION, DIRECTION AND CONSENT OF BENEFICIARIES

The undersigned, being altogether the holders of one hundred percent (100%) of the Beneficial Interest of and under the 31 Lowell Road Realty Trust (hereinafter the "Trust") u/d/t dated November 27, 2013, do hereby authorize, direct and consent to the Trustee(s) of the Trust taking all such actions as follows:

a.      the purchase of the real estate and improvements thereon owned by Edward L. Yourtee and Elaine H. Yourtee, Trustees of the Majoel Realty Trust located in Windham, New Hampshire, commonly known as 31 Lowell Road, Unit 1 (Parcel 21-D-103-1), being more fully described by deed recorded in the Rockingham County Registry of Deeds at Book 3994, Page 1213, for the purchase price of ONE HUNDRED FORTY-FIVE THOUSAND DOLLARS ($145,000.00) on or before December 31, 2013.

b.      to take all steps and execute such documentation as the Trustee(s) deem(s) necessary in order to confirm authority to act on behalf the Trust, at such time and under such terms and conditions as the Trustee(s) deem necessary and appropriate, in accordance with the provisions of the Declaration establishing the Trust and applicable law.

c.      to execute such other documentation as said Trustee(s) deem(s) necessary in order to effectuate the foregoing.

The undersigned beneficiaries hereby release and discharge the Trustee from any and all other obligations, duties and liabilities under the Trust.

EXECUTED under seal on the dates set forth below.

*[Signatures Appear on Following Pages]*

DATED:  November 27, 2013                    _____
                                             Imran Alrai, Beneficiary


DATED:  November 27, 2013                    _____
                                             Saima Alrai, Beneficiary



STATE OF NEW HAMPSHIRE
COUNTY OF ROCKINGHAM

     On this the 27th day of November, 2013 appeared before me, Imran Alrai and Saima
Alrai, beneficiaries of the 31 Lowell Realty Trust, known to me or satisfactorily proven to be the
persons described in the foregoing instrument and acknowledged that they executed the within
instrument in the capacity stated and for the purposes therein contained.



                                             _____
                                             Notary Public:
                                             My commission expires:

**31 LOWELL ROAD REALTY TRUST**

**APPOINTMENT OF TRUSTEE**

The undersigned, being altogether the holders of one hundred percent (100%) of the Beneficial Interest of and under the 31 Lowell Road Realty Trust (hereinafter the "Trust") u/d/t dated November 27, 2013, pursuant to Paragraph 5 of the Trust, do hereby appoint Munawar Chaudhary as a Co-Trustee of the Trust.

EXECUTED under seal on the dates set forth below.

DATED: November 27, 2013

_____
Imran Alrai, Beneficiary

DATED: November 27, 2013

_____
Saima Alrai, Beneficiary

STATE OF NEW HAMPSHIRE
COUNTY OF ROCKINGHAM

On this the 27th day of November, 2013 appeared before me, Imran Alrai and Saima Alrai, beneficiaries of the 31 Lowell Realty Trust, known to me or satisfactorily proven to be the persons described in the foregoing instrument and acknowledged that they executed the within instrument in the capacity stated and for the purposes therein contained.

_____
Notary Public:
My commission expires:

# 31 LOWELL ROAD REALTY TRUST

## ACCEPTANCE BY TRUSTEE

I, Munawar Chaudhary, by signing below, hereby confirm my acceptance of appointment as Trustee of the 31 Lowell Road Realty Trust under declaration of trust dated November 27, 2013.

Executed this 27th day of November, 2013

**31 LOWELL ROAD REALTY TRUST**

By: _____
Munawar Chaudhary, Trustee

STATE OF NEW HAMPSHIRE
COUNTY OF ROCKINGHAM

On this the 27th day of November, 2013 appeared before me, Munawar Chaudhary, as Trustee of the 31 Lowell Road Realty Trust, known to me or satisfactorily proven to be the person described in the foregoing instrument and acknowledged that he executed the within instrument in the capacity stated and for the purposes therein contained.

_____
Notary Public:
My commission expires:

# FIRST AMENDMENT AND COMPLETE RESTATEMENT OF THE SCHEDULE OF BENEFICIAL INTERESTS OF THE 31 LOWELL ROAD REALTY TRUST DATED THE 27th DAY OF NOVEMBER, 2013

We, Imran Alrai and Saima Alrai, both of Windham, New Hampshire, as the holders of 100% of the beneficial interest of the above referenced Trust, pursuant to Section 6 of said Trust, do hereby amend and fully restate the Schedule of Beneficial Interests as follows:

## 31 Lowell Road Realty Trust

### Dated November 27, 2013

### SCHEDULE OF BENEFICIAL INTERESTS

| Beneficiary: | Proportionate Interests |
|---|---|
| Saima Alrai | 100% |

Upon her death:

| | |
|---|---|
| Imran Alrai | 100% |

Upon his death, or if he predeceases the Primary Beneficiary:

| | |
|---|---|
| To the children of the said Saima and Imran Alrai, in equal shares, as tenants in common | 100% |

The terms of said Trust are hereby approved and we, the above-named Beneficiaries, in consideration of the execution of said Trust for ourselves and our successors, agree with the Trustees (a) to be bound by said Trust, and (b) to save the Trustees harmless from any personal liability for any action taken at the direction of the Beneficiaries, and for any error in judgment, or any loss arising out of any act or omission in the execution of the Trust so long as they act in good faith, and that each Trustee shall be responsible only for his own willful breach of trust, and to authorize the Trustees to withhold from any distribution transfer or conveyance such amounts as they from time to time reasonably deem necessary to protect them from such liability or to meet expenses of compliance with provisions of law or governmental regulations applicable to trust real estate.

As used in the Declaration of Trust, the term beneficiaries refers to the beneficiaries named from time to time in this and any revised Schedule of Beneficial Interests.

**By signing below, the undersigned specifically acknowledges that he, she or it has read the Declaration of Trust including, specifically Articles 8 and 9 relating to Trustee Liability and Trustee Compensation and agree to be bound by all provisions thereof and that he, she or it has had the opportunity to review the Declaration of Trust with legal counsel or has elected to forego review of the Declaration of Trust with an independent advisor.**

All other provisions of the Trust, not inconsistent with the within Amendment, shall remain in full force and effect.

WITNESS our hands and seal this __ day of May, 2019.

_____
Witness

_____
Imran Alrai, Beneficiary

_____
Witness

_____
Saima Alrai, Beneficiary

### STATE OF NEW HAMPSHIRE
### ROCKINGHAM COUNTY

Before me, this __ day of May, 2019, the undersigned Notary Public, personally appeared Imran Alrai and Saima Alrai, as aforesaid, proved to me through satisfactory evidence of identification, to be the persons whose names are signed on the preceding or attached document(s), and who swore or affirmed to me that the contents of the document(s) are truthful and accurate to the best of their knowledge and belief.

_____
Notary Public: ~~Tammy A. Mello~~ Tammy Mello-Pontes
My Commission Expires: ~~06/06/2023~~
6/21/2022

*[Notary seal: TAMMY A. MELLO-PONTES, NOTARY PUBLIC, NEW HAMPSHIRE, Commission Expires 06-21-2022]*

Page 2 of 2

# VISION

| Property Location | 31 LOWELL RD 1 | | Account # | 00928 | Map ID | 21/ D/ 106/ 1/ | Bldg Name | | Bldg # | 1 | | COBBETT'S OFFICE COND | State Use | 3401 |
| Vision ID | 3752 | | | | | | Bldg # | 1 | Sec # | 1 of 1 | Card # 1 of 1 | | Print Date | 11/15/2019 8:11:01 A |

## CURRENT OWNER / TOPO

**CURRENT OWNER**

31 LOWELL ROAD RT
CHAUDHARY, MUNAWAR, TEE
PO BOX 4016

WINDHAM      NH      03087

**TOPO**
1 Level

**UTILITIES**
7 Common Well
8 Shared septic

**STRT/ROAD**
1 Paved

**LOCATION**
4 Bus. District

### CURRENT ASSESSMENT

| Description | Code | Assessed |
|---|---|---|
| COMM COND | 3401 | 192,700 |
| | | |
| | Total | 192,700 |

WINDHAM, NH

2237

### SUPPLEMENTAL DATA

Alt Prcl ID
Census 10      022:
NH Class      CCON:
Tax District   N/A:

GIS ID      21-D-106      Assoc Pid#

Land Zone      CDA:
Land Zone
2nd Tax Di   N/A:
Watershed

### PREVIOUS ASSESSMENTS (HISTORY)

| Year | Code | Assessed | Year | Code | Assessed | Year | Code | Assessed |
|---|---|---|---|---|---|---|---|---|
| 2019 | 3401 | 192,700 | 2018 | 3401 | 192,700 | 2017 | 3401 | 192,700 |
| | Total | 192,700 | | Total | 192,700 | | Total | 192,700 |

## RECORD OF OWNERSHIP

| | BK-VOL/PAGE | SALE DATE | Q/U | V/I | SALE PRICE | VC |
|---|---|---|---|---|---|---|
| 31 LOWELL ROAD RT | 5502  2104 | 12-18-2013 | Q | I | 145,000 | 00 |
| MAJOEL RT | 3994  1213 | 04-07-2003 | U | I | 0 | 1A |
| YOURTEE, EDWARD L | 2934  1479 | 07-17-1992 | Q | I | 165,000 | 00 |

This signature acknowledges a visit by a Data Collector or Assessor

### APPRAISED VALUE SUMMARY

| | |
|---|---|
| Appraised Bldg. Value (Card) | 192,700 |
| Appraised Xf (B) Value (Bldg) | 0 |
| Appraised Ob (B) Value (Bldg) | 0 |
| Appraised Land Value (Bldg) | 0 |
| Special Land Value | 0 |
| Total Appraised Parcel Value | 192,700 |
| Valuation Method | C |
| | |
| Total Appraised Parcel Value | 192,700 |

## EXEMPTIONS

| Year | Code | Description | Amount |
|---|---|---|---|
| | | | |

### OTHER ASSESSMENTS

| Code | Description | Number | Amount | Comm Int |
|---|---|---|---|---|
| | | | | |
| | | Total | | |

### VISIT / CHANGE HISTORY

| Date | Id | Type | Is | Cd | Purpose/Result |
|---|---|---|---|---|---|
| 05-13-2016 | STM | | | 20 | Permit Review- No Entry |
| 05-15-2015 | JG | | | 20 | Permit Review- No Entry |
| 02-16-2006 | RN | | | 15 | Interior Inspection |
| 10-03-2000 | RN | | | 13 | On site data review, no ent |

## ASSESSING NEIGHBORHOOD

| Nbhd | Nbhd Name | | B |
|---|---|---|---|
| 0001 | | | |

## NOTES

5/15 EST BP 100%
BLDG A, UNIT #1: 1,593SF
MEDICAL OFFICE W/ 4 EXAM RMS
SO NH INTERNAL MEDICINE
NO ANSWER
05-16 BP COMPLETE N/V CHANGE

## BUILDING PERMIT RECORD

| Permit Id | Issue Date | Type | Description | Amount | Insp Date | % Comp | Date Comp | Comments |
|---|---|---|---|---|---|---|---|---|
| 14.18 | 01-30-2014 | RE | Remodel | 28,500 | 05-13-2016 | 100 | | INTERIOR REMODEL BY RE |

## LAND LINE VALUATION SECTION

| B | Use Code | Description | Zone | Land Type | Land Units | Unit Price | Size Adj | Site Index | Cond. | Nbhd. | Nbhd. Adj | Notes | Location Adjustment | Adj Unit P | Land Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 3401 | OFF CONDO | CDA | RE | 0.000 AC | 220,000.00 | 1.00000 | 2 | 1.00 | 5 | 1.000 | SITE AREA = 1.7 ACRES | 0.0000 | 220,000.0 | 0 |

| Total Card Land Units | 0.000 | AC | Parcel Total Land Area | 0.0000 | | Total Land Value | 0 |

Property Location  31 LOWELL RD 1
Vision ID  3752          Account #  00928          Map ID  21/ D/ 106/ 1/          Bldg #  1

State Use 3401
Print Date 11/15/2019 8:11:01 A

Bldg Name  COBBETTS OFFICE COND
Sec #  1 of  1          Card #  1 of  1



## CONSTRUCTION DETAIL

| Element | Cd | Description |
|---|---|---|
| Style: | 56 | Office Condo |
| Model | 06 | Com Condo |
| Grade | 11 | C |
| Stories: | 1 | |
| Occupancy | 1 | |
| Interior Wall 1: | 05 | Drywall/Sheet |
| Interior Wall 2: | | |
| Interior Floor 1 | 14 | Carpet |
| Interior Floor 2 | 06 | Inlaid Sht Gds |
| Heat Fuel: | 03 | Gas |
| Heat Type: | 04 | Forced Air-Duc |
| AC Type: | 03 | Central |
| Ttl Bedrms: | 00 | |
| Ttl Bathrms: | 00 | |
| Ttl Half Blths: | 0 | |
| Xtra Fixtres | 1 | |
| Total Rooms: | 0 | |
| Bath Style: | 9 | |
| Kitchen Style: | 02 | Average |

## CONSTRUCTION DETAIL (CONTINUED)

| Element | Cd | Description |
|---|---|---|

### CONDO DATA

| | | | | |
|---|---|---|---|---|
| Parcel Id | 101726 | C 14 | Owne | 17. |
| | 101726 | 31 Lowell RD | B1 | TSI |
| Adjust Type | Code | Description | | Factor% |
| Condo Flr | 2 | Med Office Ull | | 110 |
| Condo Unit | 1 | | | 100 |

### COST / MARKET VALUATION

| | |
|---|---|
| Building Value New | 310,726 |
| Base Rate | 145.00 |
| 308,211 | 308,211 |
| Net/Other/Adjustment | Net/Other/Adjustment |
| Year Built | 1990 |
| Effective Year Built | 1996 |
| Depreciation Code | A |
| Remodel Rating | |
| Year Remodeled | |
| Depreciation % | 38 |
| Functional Obsol | |
| External Obsol | |
| Trend Factor | 1 |
| Condition | |
| Condition % | |
| Percent Good | 62 |
| Crs Sect Rcnld | 192,700 |
| Dep % Ovr | |
| Dep Ovr Comment | |
| Misc Imp Ovr | |
| Misc Imp Ovr Comment | |
| Cost to Cure Ovr | |
| Cost to Cure Ovr Comment | |

## OB - OUTBUILDING & YARD ITEMS(L) / XF - BUILDING EXTRA FEATURES(B)

| Code | Description | L/B | Units | Unit Price | Yr Blt | Cond. Cd | % Gd | Grade | Grade Adj. | Appr. Value |
|---|---|---|---|---|---|---|---|---|---|---|

## BUILDING SUB-AREA SUMMARY SECTION

| Code | Description | Living Area | Floor Area | Eff Area | Unit Cost | Undeprec Value |
|---|---|---|---|---|---|---|
| AOF | Office, (Average) | 1,560 | 1,560 | 2,574 | 197.57 | 308,211 |
| | Ttl Gross Liv / Lease Area | 1,560 | 1,560 | 2,574 | | 308,211 |

If you want information about coverage or need assistance to resolve complaints, please call our toll free number:  1-800-729-1902.  If you make a claim under your policy, you must furnish written notice in accordance with Section 3 of the Conditions.  Visit our World-Wide Web site at http://www.stewart.com.
ALTA Owner's Policy (6/17/06)

# OWNER'S POLICY OF TITLE INSURANCE
## ISSUED BY

## STEWART TITLE GUARANTY COMPANY

**Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.**

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS, STEWART TITLE GUARANTY COMPANY, a Texas corporation, (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title.  This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
       (i)   forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
       (ii)  failure of any person or Entity to have authorized a transfer or conveyance;
       (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
       (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
       (v)  a document executed under a falsified, expired, or otherwise invalid power of attorney;
       (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
       (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land.  The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

Countersigned by:

**stewart**
title guaranty company

*Jacqueline M Hudkins*
_____
**Authorized Countersignature**

Hudkins Law PLLC
25 Indian Rock Road, Suite 9
Windham, NH 03087
(603) 434-1770
Agent ID: 290224

*[Matt Morris signature]*
_____
**Matt Morris**
**President and CEO**

*[Denise Carraux signature]*
_____
**Denise Carraux**
**Secretary**

Copyright 2006-2009 American Land Title Association.  All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.   Reprinted under license from the American Land Title Association.

File No.  11.133159
Page 1  of Policy Serial No.: O-9301-002617671

AMERICAN
LAND TITLE
ASSOCIATION

## COVERED RISKS (Continued)

9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

   (i)  to be timely; or
   (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;

   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

1. **DEFINITION OF TERMS**
   The following terms when used in this policy mean:
   (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.
   (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
   (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
   (d) "Insured": The Insured named in Schedule A.
      (i) the term "Insured" also includes
         (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
         (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
         (C) successors to an Insured by its conversion to another kind of Entity;
         (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
            (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
            (2) if the grantee wholly owns the named Insured,
            (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
            (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the

Insured named in Schedule A for estate planning purposes.
      (ii) with regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.
   (e) "Insured Claimant": An Insured claiming loss or damage.
   (f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.
   (g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.
   (h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.
   (i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.
   (j) "Title": The estate or interest described in Schedule A.
   (k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

Copyright 2006-2009 American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited. Reprinted under license from the American Land Title Association.

File No. 11.133159
**Page 2 of Policy Serial No.: O-9301-002617671**



AMERICAN
LAND TITLE
ASSOCIATION

**CONDITIONS (Continued)**

2. **CONTINUATION OF INSURANCE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

3. **NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

4. **PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5. **DEFENSE AND PROSECUTION OF ACTIONS**

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6. **DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance. To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay. Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

Copyright 2006-2009 American Land Title Association. All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited. Reprinted under license from the American Land Title Association.

File No. 11.133159

Page 3 of Policy Serial No.: O-9301-002617671



AMERICAN
LAND TITLE
ASSOCIATION

## CONDITIONS (Continued)

**8. DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

    (i) the Amount of Insurance; or

    (ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

    (i) the Amount of Insurance shall be increased by 10%, and

    (ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9. LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

**11. LIABILITY NONCUMULATIVE**

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

**12. PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

**14. ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**16. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17. CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at Claims Department at P.O. Box 2029, Houston, TX 77252-2029.

Copyright 2006-2009 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

ALTA OWNER'S POLICY (6/17/06)

## SCHEDULE A

**Name and Address of
Title Insurance Company:**

Stewart Title Guaranty Company
P.O. Box 2029, Houston, TX  77252

**File No.:** 11.133159

**Policy No.:**  O-9301-002617671

**Address Reference:**  31 Lowell Road, Unit 1, Windham, NH 03087
(For Company Reference Purposes Only)

**Amount of Insurance:** $145,000.00

**Premium:**  $435.00

**Date of Policy:**  December 18, 2013 at 1:38pm

1. **Name of Insured:**

   31 Lowell Road Realty Trust u/d/t dated November 27, 2013

2. **The estate or interest in the Land that is insured by this policy is:**

   Fee Simple

3. **Title is vested in:**

   31 Lowell Road Realty Trust u/d/t dated November 27, 2013

4. **The Land referred to in this policy is described as follows:**

   SEE EXHIBIT "A" ATTACHED HERETO

**Copyright 2006-2009 American Land Title Association.  All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.   Reprinted under license from the American Land Title Association.
File No. 11.133159
STG ALTA Owner's Policy Sch A

Page 1 of 2     **STEWART TITLE
GUARANTY COMPANY**



ALTA OWNER'S POLICY (6/17/06)

## EXHIBIT "A"

## LEGAL DESCRIPTION

One unit in Cobbetts Office Condominium, located at 31 Lowell Road, Windham, County of Rockingham and State of New Hampshire, and being more particularly bounded and described as follows:

Shown as Unit #1, of Building A, described and identified in the Declaration of Condominium, Cobbetts Office Condominium, dated September 11, 1987 and recorded in the Rockingham County Registry of Deeds at Book 2703, Page 1875, as amended, which Declaration, together with the By-Laws and other appendices thereto, are sometimes hereinafter called "Declaration", and also shown on a certain site plan for Cobbetts Office Condominium, Windham, N.H. and certain floor plans for Cobbetts Office Condominium, Windham, N.H. all recorded in the Rockingham County Registry of Deeds, hereinafter collectively referred to as the "Plans" (D-19524).

Also conveying an undivided interest in the Common Area, as defined, described and identified in the Declaration and on the Plans.

Also conveying the following rights and easements:

1.      Easements in common with others to use the Common Area, excepting Limited Common area, as set for in the Declaration.

2.      Non–exclusive easements for structural support and encroachments and for repair, and also such other rights and easements as set forth in the Declaration.

This conveyance is subject to the following:

1.      There is excepted from the Unit conveyed herein the Common Area lying within said Unit as set forth in the Declaration.

2.      Non-exclusive easements for structural support, encroachments, and repair in favor of the owners of other Units in the Condominium as set forth in the Declaration, and the other provisions of the Declaration as amended from time to time by instruments recorded in the Rockingham County Registry of Deeds, which provisions, together with any amendments hereto shall constitute covenants running with the land and shall bind any person having at any time any interest or estate in said unit, as though such provisions were recited and stipulated at length herein.

3.      Other easements, covenants and restrictions of record.

Copyright 2006-2009 American Land Title Association.  All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.   Reprinted under license from the American Land Title Association.
File No. 11.133159
STG ALTA Owner's Policy Sch A

Page 2 of 2    **STEWART TITLE
GUARANTY COMPANY**



LTA OWNER'S POLICY (6/17/06)

## SCHEDULE B

File No.: 11.133159

Policy No.: O-9301-002617671

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. Rights or claims of parties in possession not shown by the Public Records.

2. Easements, or claims of easements, not shown by the Public Records.

3. Encroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey or inspection of the premises.

4. Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

5. Taxes or special assessments which are not shown as existing liens by the Public Records.

6. Real estate taxes paid through March 31, 2014.  All subsequent taxes are not yet due and payable.

7. Subject to Declaration of Condominium and By-Laws for Cobbetts Office Condominium, dated September 11, 1987 and recorded in the Rockingham County Registry of Deeds at Book 2703, Page 1875.

8. Subject to all matters as shown on Plan recorded with said Deeds as Plan D-19524.

9. Subject to and together with the following rights and easements

10. 1.        Easements in common with others to use the Common Area, excepting Limited Common area, as set for in the Declaration.

11. 2.        Non–exclusive easements for structural support and encroachments and for repair, and also such other rights and easements as set forth in the Declaration.

12. Subject to the following:

13. 1.        There is excepted from the Unit conveyed herein the Common Area lying within said Unit as set forth in the Declaration.

14. 2.        Non-exclusive easements for structural support, encroachments, and repair in favor of the owners of other Units in the Condominium as set forth in the Declaration, and the other provisions of the Declaration as amended from time to time by instruments recorded in the Rockingham County Registry of Deeds, which provisions, together with any amendments hereto shall constitute covenants running with the land and shall bind any person having at any time any interest or estate in said unit, as though such provisions were recited and stipulated at length herein.

**Copyright 2006-2009 American Land Title Association.  All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No. 11.133159
NH STG ALTA Owner's Policy Sch B SE

Page 1 of 2



ᴸTA OWNER'S POLICY (6/17/06)

## SCHEDULE B

15. 3.      Other easements, covenants and restrictions of record.

End of Exceptions

**Copyright 2006-2009 American Land Title Association.  All rights reserved.**
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.   Reprinted under license from the American Land Title Association.

File No. 11.133159
NH STG ALTA Owner's Policy Sch B SE

Page 2 of 2    



**IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  12-20-2013

Employer Identification Number:
46-4356872

Form:  SS-4

Number of this notice:  CP 575 B

31 LOWELL ROAD REALTY TRUST
IMRAN ALRAI GEN PTR
31 LOWELL RD
WINDHAM, NH  03087

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.


WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

     Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 46-4356872.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

     When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

     Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

          Form 1065                    04/15/2014

     If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
*Accounting Periods and Methods.*

     We assigned you a tax classification based on information obtained from you or your
representative.  It is not a legal determination of your tax classification, and is not
binding on the IRS.  If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).  Note:
Certain tax classification elections can be requested by filing Form 8832, *Entity
Classification Election.*  See Form 8832 and its instructions for additional information.

     A limited liability company (LLC) may file Form 8832, *Entity Classification
Election,* and elect to be classified as an association taxable as a corporation.  If
the LLC is eligible to be treated as a corporation that meets certain tests and it
will be electing S corporation status, it must timely file Form 2553, *Election by a
Small Business Corporation.*  The LLC will be treated as a corporation as of the
effective date of the S corporation election and does not need to file Form 8832.

     To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

(IRS USE ONLY)     575B                12-20-2013  31LO  B  9999999999  SS-4

**IMPORTANT REMINDERS:**

    *  Keep a copy of this notice in your permanent records. **This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you.** You may give a copy of this document to anyone asking for proof of your EIN.

    *  Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

    *  Refer to this EIN on your tax-related correspondence and documents.

    If you have questions about your EIN, you can call us at the phone number or write to us at the address shown at the top of this notice. If you write, please tear off the stub at the bottom of this notice and send it along with your letter. If you do not need to write us, do not complete and return the stub.

    Your name control associated with this EIN is 31LO. You will need to provide this information, along with your EIN, if you file your returns electronically.

    Thank you for your cooperation.


                    Keep this part for your records.        CP 575 B (Rev. 7-2007)

------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account. Please
correct any errors in your name or address.                      CP 575 B

                                                    9999999999

Your Telephone Number   Best Time to Call   DATE OF THIS NOTICE:  12-20-2013
(    )      .  -                            EMPLOYER IDENTIFICATION NUMBER:  46-4356872
_____    _____          FORM:  SS-4              NOBOD


INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023                 31 LOWELL ROAD REALTY TRUST
հիմնական                                    IMRAN ALRAI GEN PTR
                                            31 LOWELL RD
                                            WINDHAM, NH  03087

(IRS USE ONLY)     575B              12-20-2013  31LO  B  9999999999  SS-4

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records. **This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you.** You may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to us at the address shown at the top of this notice.  If you write, please tear off the stub at the bottom of this notice and send it along with your letter.  If you do not need to write us, do not complete and return the stub.

Your name control associated with this EIN is 31LO.  You will need to provide this information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.

Keep this part for your records.        CP 575 B (Rev. 7-2007)

-------------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account.  Please                              CP 575 B
correct any errors in your name or address.
                                                                  9999999999

Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  12-20-2013
(     )      -                            EMPLOYER IDENTIFICATION NUMBER:  46-4356872
_____    _____     FORM:  SS-4              NOBOD


INTERNAL REVENUE SERVICE                 31 LOWELL ROAD REALTY TRUST
CINCINNATI  OH   45999-0023              IMRAN ALRAI GEN PTR
|..|.|.|.|.|.|.|.|.|.|.||..|....|..|.|.|.|.|      31 LOWELL RD
                                         WINDHAM, NH  03087