*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO SEPTEMBER 7, 2020

```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                 *
UNITED STATES OF AMERICA         *
                                 *  1:18-cr-192-JL
           v.                    *  October 22, 2019
                                 *  10:03 a.m.
IMRAN ALRAI                      *
                                 *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:

For the Government:        Cam T. Le, AUSA
                           Matthew Hunter, AUSA
                           Robert J. Rabuck, AUSA
                           United States Attorney's Office

For the Defendant:         Timothy M. Harrington, Esq.
                           Shaheen & Gordon PA

Court Reporter:            Liza W. Dubois, RMR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, New Hampshire 03301
                           (603)225-1442

```
1                        P R O C E E D I N G S
2              (Off-the-record chambers conference held.)
3              THE CLERK:  The Court has before it for
4    consideration this morning a motion hearing in criminal
5    case 18-cr-192-JL, United States of America vs. Imran
6    Alrai.
7              THE COURT:  Why don't counsel please identify
8    themselves for the record so we can proceed.
9              MR. HARRINGTON:  Tim Harrington, your Honor,
10   for Mr. Alrai.  Mr. Alrai is seated to my left.
11             THE COURT:  All right.
12             MS. LE:  Good morning, your Honor.  Cam Le,
13   Matthew Hunter, and Rob Rabuck on behalf of the
14   United States.
15             THE COURT:  Thank you, counsel.
16             Now, we were scheduled here to be a motion --
17   here on a motion to repatriate funds.
18             What was the number of the motion, Charli?
19             THE CLERK:  7, Judge.
20             THE COURT:  Document 7, right.
21             I'm going to let counsel fill in the blanks
22   here, but we just had a chambers conference where the
23   United States Attorney's Office, represented by three
24   lawyers today, one of which is civil forfeiture counsel,
25   Mr. Rabuck, explained to the Court that there were
```

1  some -- not necessarily approvals, but guidance required
2  by the Department of Justice in Washington before this
3  matter can proceed.
4         Do I have that right?
5         MS. LE:  Yes, your Honor.  The Department of
6  Justice requires that before we seek to obtain an order
7  from the Court to repatriate funds in a foreign country
8  that we confer with the Office of International Affairs
9  or the Money Laundering Asset Recovery Section.
10        The government has started that process.  We
11 have not received definitive word about how to proceed
12 here because the money, if it still exists, your
13 Honor --
14        THE COURT:  Yeah.
15        MS. LE:  -- is in Pakistan.  It does implicate
16 Pakistan's sovereignty.  So we have to wait for
17 additional guidance from the Department of Justice
18 before we ask for an order to repatriate money.
19        So based on our conversation in chambers, the
20 government seeks --
21        THE COURT:  Well, let me just stop you there,
22 because I want to --
23        MS. LE:  Sure.
24        THE COURT:  First of all, I appreciate that
25 very -- very clear, very concise summary.  It boils down

1  to exactly what I needed to understand.  Thank you.
2              So I guess what I would -- so can I assume
3  then that until you receive that guidance, you'd prefer
4  not to proceed on the -- on the repatriation quite yet?
5              MS. LE:  Yes, your Honor, that would be fair
6  to say.
7              THE COURT:  All right.  Do you have an
8  alternative request?
9              MS. LE:  We do, your Honor.
10             As the Court knows, since the initial filing,
11 Counsel -- prior counsel at least -- responded to the
12 government's motion to repatriate funds.  The objection
13 is at document ECF number 15.
14             In that particular document, prior counsel
15 represented to the Court that the money that the
16 government seeks -- which as the Court knows, we've now
17 modified that request, not for 1.54.90 (sic), which was
18 the original amount that we sought.
19             Since our hearing October 10th, the government
20 has reassessed our position and we are now seeking
21 repatriation of $544,600, which is the total amount of
22 funds that were wired and involved in the money
23 laundering charges set forth in Counts 19 to 30 of the
24 superseding indictment.
25             THE COURT:  That seems to be the subject funds

1  in the money laundering allegations.
2              MS. LE:  That's correct, your Honor.
3              THE COURT:  Okay.
4              MS. LE:  So to the extent that defense counsel
5  maintains that this money no longer exists in that
6  Pakistan bank account, the government is asking the
7  Court to order the defendant to provide an accounting of
8  those funds.
9              If the money's no longer there, then the
10 government's motion is moot, but the defendant should be
11 in a position to access his accounts over which he has
12 total control to provide the Court with a statement or a
13 series of statements for that account to show the
14 movement of money out of the account.  If the money was
15 spent on property, on equipment, on payroll, that would
16 satisfy the government.
17             But at the end of the day, your Honor,
18 representation of counsel is not enough.  The defendant
19 cannot hide behind money that's in a foreign country and
20 say it's no longer there.  Maybe it isn't there, but the
21 Court should know what happened to that money and it
22 would help this Court decide whether a repatriation
23 order is even appropriate.
24             THE COURT:  All right.  Thank you, Counsel.
25             MS. LE:  Thank you, your Honor.

1       THE COURT:  As a preliminary matter,
2  Mr. Harrington, we talked in chambers and I just wanted
3  you to clarify one thing.
4       The prosecutor just said that your client has,
5  quote, total control over that account, but I think you
6  were -- you were explaining to me that while it is the
7  defendant's bank account we're talking about in
8  Pakistan, there are access issues implicated by
9  Pakistani law, right?
10      MR. HARRINGTON:  That's my understanding,
11 Judge.
12      THE COURT:  Hum me a few bars of that again.
13 I forget if it was about biometric scan or something?
14      MR. HARRINGTON:  I will, Judge.
15      My understanding is -- and this is not like an
16 added security measure.  By way of offer of proof, my
17 understanding is that pursuant to Pakistani law, for a
18 bank account, it's a common practice to require a
19 biometric scan, basically a thumbprint or a fingerprint,
20 and that has to be reupped annually.
21      My client obviously has been prohibited from
22 traveling to Pakistan.  He has not done that.  So the
23 account has been frozen and he does not have access to
24 that and my understanding is he would not have access to
25 that simply by way of calling them and saying, you know,

1  hey, I'd like to reactivate the account; I'm in the
2  United States.  My understanding is it actually requires
3  him to be there personally to submit to this biometric
4  scan.
5           THE COURT:  And the account's been frozen not
6  by virtue of this indictment, but just by Pakistani law
7  or at least the rules of that bank that require an -- I
8  guess a reupping of the thumbprint.
9           MR. HARRINGTON:  That's my understanding,
10 Judge.
11          THE COURT:  All right.
12          MR. HARRINGTON:  And then, likewise, you know,
13 if we can -- we just started looking into this relative
14 to trying to get a statement from the bank relative to
15 what I've just proffered to you, Judge, about the access
16 and the fact that the account is frozen.
17          I don't know if we'll be able to get
18 substantive information from the bank relative to
19 account balances, things of that nature, because of the
20 account status.  That's one of the inquiries that we're
21 going to make and we'll see where that goes.
22          But that's my understanding relative to my
23 client's ability to access the account.
24          THE COURT:  All right.  What do you want to
25 say about their request for accounting?  I'm going to

1  give people an opportunity to brief it, but is there
2  anything you want to say about it now?
3         MR. HARRINGTON:  The only issue I'd raise, as
4  we talked about in chambers, is the scope of an order.
5  I would have some concerns relative to Fifth Amendment
6  issues, as I indicated to you in chambers, Judge.
7         I think relative to -- if I'm able to simply
8  obtain a statement, like a bank statement, indicating
9  that, you know, the account balance is, you know, such
10 and such, or if I'm able to obtain other records
11 indicating, you know, when deposits were received or
12 things of that nature or when money was sent out of the
13 account, those are things that I think the -- would
14 probably be appropriately within the Court's purview to
15 order because I don't know as they would be necessarily
16 encompassed by a Fifth Amendment privilege.
17        But that's something that I want to look a
18 little bit further into.  I think if you were to order
19 me to go beyond that by conducting some other type of
20 analysis relative to like a CPA or something like that,
21 that would be something that could implicate Fifth
22 Amendment issues.
23        So I have some concerns and questions about
24 the scope of an order relative to an accounting.
25        THE COURT:  Okay.

1      MR. HARRINGTON:  And we would like to look
2  into that further, based on our discussion in chambers.
3      THE COURT:  Let me ask -- let me ask Counsel,
4  is -- both counsel.
5      Is seven days enough or would you like ten
6  days?  What do you think is a reasonable amount of time
7  to -- I'm going to have you simultaneously file instead
8  of like reacting to each other's filings, just because I
9  want to get to the bottom of this.  It's gone on too
10 long.  How much is enough time?
11     MS. LE:  Seven days is plenty for us, your
12 Honor.
13     THE COURT:  You okay with that?
14     MR. HARRINGTON:  I can do it in seven.  I was
15 going to say ten, Judge, but we can do it in seven.
16     THE COURT:  Okay.  Today's the --
17     THE CLERK:  22nd.
18     THE COURT:  Today's the 22nd, so I'm going to
19 split the difference with you two and I'm going to
20 request that you have it done on the 31st.
21     Here's what I want.  First of all, I'm looking
22 at document number 18, which is the government's reply
23 to former counsel's objection to this repatriation
24 proceeding.
25     And if you look at page 3 in the very last

1   paragraph, the government argues, quote:  Under the
2   authority of 21 U.S.C. 853(e), the Court can order Alrai
3   to provide an accounting of assets.
4           Then it cites the *Hailey* case out of the
5   District of Maryland from 2012 at 840 F.Supp. 2d 896.
6           I'm going to construe that as this -- a formal
7   request for this accounting that Ms. Le just made.
8   Okay?  And I'm going to allow briefing on that.  I'd
9   like the briefing to be here by the 31st, to be filed by
10  the 31st, and here's what I'd request.
11          As far as I'm concerned, all I need is three
12  things.  I want to make sure I understand the authority
13  of the Court to order the accounting for which 85 --
14  Section 853(e) is cited here, the authority of it, the
15  proper scope of it, consistent with the defendant's
16  Fifth Amendment privilege, and then, finally, each of
17  you can submit a proposed order.  All right?  Each of
18  you can submit a proposed order which the Court will use
19  to fashion an order, if it decides to actually issue
20  this order.
21          All right?  Everybody clear on that?
22          MS. LE:  Yes, your Honor.  Thank you.
23          THE COURT:  You good?
24          MR. HARRINGTON:  I am, Judge.
25          THE COURT:  Okay.

1    MR. HARRINGTON:  The only question I would
2    raise, and I don't know if we're past this or not, was
3    one of the things that I had raised in chambers with you
4    is about whether you would even get to this point
5    relative to the repatriation issue, given that the
6    amount of the money that the government has already
7    secured seems to be in excess of what is covered by the
8    indictment.
9            So I don't know if that's just something
10   separate that we, you know, deal with at a later date,
11   but it seems to be even something that you would address
12   before we got to the order that we're talking about.
13           THE COURT:  All right.  I guess -- so, look.
14   All right.
15           The Court's view is that any repatriation
16   order or accounting order the Court would possibly issue
17   would only be in support of an eventual forfeiture.  My
18   view is that repatriation of this accounting informs and
19   sort of precedes a forfeiture -- an eventual forfeiture
20   order.
21           So I guess what I'd be interested in knowing
22   is based on your readings of the indictment, prosecution
23   and defense, is what does the superseding indictment
24   allege probable cause to establish as a possible amount
25   of any eventual forfeiture here.

1       And I guess I can -- I'll consider that,
2  Mr. Harrington, in terms of whether this -- whether the
3  seizure of the approximately $2 million in assets sort
4  of moots out this whole question -- which is your
5  argument -- moots out this whole question of need for an
6  accounting.
7       I would still ask, though -- it's up to you,
8  of course, how you want to approach it, Mr. Harrington,
9  but I'd still like your counsel on the other issues as
10 well.  Right?  The authority, the scope, and a proposed
11 order.  Whether or not you file it, that's up to you.
12      Anything else for the Court?
13      MS. LE:  I'm sorry, your Honor.  May I just
14 ask for a little guidance?
15      Would the Court like us to address that in
16 this particular pleading --
17      THE COURT:  Sure.  Just --
18      MS. LE:  -- or not?
19      THE COURT:  I don't think it's much of a -- I
20 think it's a simple reading of the indictment and based
21 on a fair reading of the indictment, what the indictment
22 established probable cause for as an eventual forfeiture
23 amount.
24      By the way, we all know that after a trial the
25 forfeiture amount could far exceed anything alleged in

1  the grand jury indictment, but for purposes of
2  repatriation, I think we're -- unless you want to put on
3  more proof at a hearing, a pretrial hearing, I think
4  we're stuck with the indictment. I don't want to say
5  stuck with. We're bound by the indictment in terms of
6  its probable cause allegations.
7              So I'm just saying that whatever you think the
8  indictment establishes probable cause for as an eventual
9  forfeiture amount, that's what I'd want to know, how do
10 you read the indictment as for -- as to that issue.
11             You seem like you're still puzzled.
12             MS. LE:  Right.  It's a little complicated
13 because depending on the practice of the prosecutor and
14 the district --
15             THE COURT:  Yeah.
16             MS. LE:  -- forfeiture is either something
17 that the grand jury specifically finds --
18             THE COURT:  Yeah.
19             MS. LE:  -- versus the government adding that
20 as an allegation and then within the body of the
21 speaking indictment sets forth specific facts and some
22 numbers, which is the second -- the second scenario is
23 what we have here in the superseding indictment, your
24 Honor.
25             THE COURT:  Absolutely.

```
 1              MS. LE:  So that makes it a little
 2   complicated.  It depends on one's reading, I would
 3   suppose, and that's why --
 4              THE COURT:  All I want is your best reading.
 5              MS. LE:  Sure.
 6              THE COURT:  But -- but it -- I think your
 7   point is very well taken and it's also very well
 8   illustrated by this indictment, by the way, because the
 9   indictment has money laundering allegations.  Those --
10   those clearly, to the Court, establish probable cause
11   regarding the forfeitable -- the forfeitability of a
12   dollar figure or a money judgment equal to the amount of
13   the laundered funds.  There's probable cause allegations
14   that a certain amount of money was laundered.  That
15   seems clear.
16              The question is whether your other
17   allegations, right, your -- your wire fraud allegations,
18   what amount of money, if any, do they establish probable
19   cause for the forfeiture of.  And that's just a matter
20   of, as you said, prosecutor practice, the way the
21   indictment is actually written.  Not much I can do to
22   help you there except to say give me your best argument.
23   Okay?
24              MR. HARRINGTON:  Thank you, Judge.
25              MR. HUNTER:  Thank you, your Honor.
```

15

```
 1              MR. RABUCK:  Thank you, your Honor.
 2              THE COURT:  We're good?  Anything else for the
 3   Court?
 4              MR. HARRINGTON:  (Shakes head.)
 5              THE COURT:  All right then.  Thank you,
 6   counsel.
 7              (Proceedings concluded at 10:16 a.m.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 1:18-cr-00192-JL   Document 134   Filed 06/08/20   Page 16 of 16

16

C E R T I F I C A T E

    I, Liza W. Dubois, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.

Submitted: 6/8/2020    /s/  Liza W. Dubois
                               LIZA W. DUBOIS, RMR, CRR