*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO NOVEMBER 25, 2021

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

* * * * * * * * * * * * * * * * * * *
                                    *
UNITED STATES OF AMERICA            *
                                    *   1:18-cr-192-JL
              v.                    *   November 3, 2020
                                    *   4:31 p.m.
IMRAN ALRAI                         *
                                    *
* * * * * * * * * * * * * * * * * * *

TRANSCRIPT OF IN CHAMBERS CONFERENCE
HELD VIA VIDEOCONFERENCE
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:


For the Government:       Matthew Hunter, AUSA
                          John S. Davis, AUSA
                          Cam T. Le, AUSA
                          United States Attorney's Office


For the Defendant:        Donna J. Brown, Esq.
                          Michael Gregory Eaton, Esq.
                          Wadleigh Starr & Peters, PLLC


For the United Way:       John J. Commisso, Esq.
                          Commisso Law PC


Court Reporter:           Liza W. Dubois, RMR, CRR
                          Official Court Reporter
                          United States District Court
                          55 Pleasant Street
                          Concord, New Hampshire 03301
                          (603)225-1442

P R O C E E D I N G S

THE CLERK:  The Court has before it for consideration this afternoon a chambers conference in criminal case 18-cr-192-JL, United States of America vs. Imran Alrai.

THE COURT:  Hi, everybody.  I think recently I had the same idea as counsel, that I needed to get this case back in gear again and I'd let it -- I kind of let it languish a bit paying attention to other issues.  It obviously needs attention because there are several issues to resolve.

I mentioned it to Charli or Jadean, I just can't remember who, but I think it was Charli who might have mentioned back to me that counsel wanted to talk to me about it as well, so it's a good idea.

Now, I know the defendant -- I see the defendant here.  The defendant is appearing or participating personally and I was told -- I was told that the defendant and Attorney Brown requested a record, so I guess before I start I'll just ask is there anything, Attorney Brown, in particular that you want to put on the record?

MS. BROWN:  No, your Honor -- well, I do.  I just apologize.  I explained to Charli before you came on that our neighbor's landscaping, this is the day they have large machinery sucking up leaves, so it's really loud out there, but they've gone away for a minute.

The one thing I did want to put on the record, your

1    Honor, is that your -- and I apologize I don't have the docket

2    number handy, I want to say 164, but your second order on

3    motion -- or your order on the second motion for discovery, you

4    said that if there were further discovery issues you wanted to

5    have a conference on that.  And so then when I got the emails

6    from the government that they wanted a conference, I'm like,

7    oh, good, we'll both address our issues.

8          So we have drafted two motions.  One is a motion for

9    Rule 17 subpoena and a motion to compel, as I communicate --

10   the government, at least as I understand it, hasn't produced

11   everything from your order but instead there are some items

12   that there's a claim of privilege, so they've given a privilege

13   log.  We are arguing whether that privilege is valid or not

14   and -- or it's been waived, I think is probably a better

15   argument.

16         We sent an email to the government yesterday morning

17   saying we intend to file these motions.  We're waiting for

18   their position.  As soon as we hear back from them, we'll file

19   them.  They're ready to go.  We can file them like tomorrow, as

20   soon as we get back from the --

21         THE COURT:  I think we lost Mr. Hunter.

22         THE CLERK:  You're right, Judge.  He just dropped

23   off.

24         MS. LE:  I think he's trying to call in, Judge --

25         THE COURT:  Okay.

1          MS. LE:  -- on audio.

2          THE COURT:  Okay.  Let's give him a chance.  Was he

3    the one who was going to speak about this issue or --

4          MR. DAVIS:  (Nods head.)

5          THE COURT:  Okay.  I had a feeling.

6          MS. LE:  And, Ms. Brown, you never sent us a draft

7    of the motion that you plan to file.  You just told us that you

8    were going to file some kind of motion, right?

9          MS. BROWN:  I'm sorry.  I was just muting because it

10   got really loud again.

11         MS. LE:  We never received a draft of the two

12   motions that you were referring to just now.

13         MS. BROWN:  We have not sent a draft of the two

14   motions.  I -- I had sent you a summary of them.  If you would

15   like us to send a draft before we file them, we can do that

16   probably by tomorrow morning.

17         THE COURT:  Only because -- and I see Mr. Hunter

18   rejoined us.

19         MS. BROWN:  Okay.

20         THE COURT:  Matt, are you there?

21         MR. HUNTER:  Yes.  I just joined by phone.  My

22   Internet connection apparently is not very good right now.

23         THE COURT:  That's okay.  Let me just bring you up

24   to date.

25         Attorney Brown explained to me that -- that the

1      United States had claimed privilege with respect to some of the

2      discovery ordered by the -- by the Court and had provided a

3      privilege log and she intended to file a motion to compel,

4      along with a subpoena -- motion for a subpoena to ask, I guess,

5      for someone to produce something with respect to that.

6                And AUSA Le asked if -- she'd like to get a look at

7      those motions before they're filed with a draft.  It's probably

8      a good idea just in case when you -- when you provide the

9      motion, Attorney Brown, it might be that, you know, even if

10     some percentage of it can be resolved, even if it's only like

11     20 percent or something, it might be helpful.  And if not, we

12     haven't lost anything.  So why don't you take a day before you

13     file it and provide drafts to the prosecutors.  Okay?

14                MS. BROWN:  Okay.

15                THE COURT:  Okay.

16                MS. LE:  And, your Honor, I believe that Ms. Brown

17     was referring to United Way that was asserting a privilege, not

18     the United States.

19                THE COURT:  Oh.

20                MS. BROWN:  Oh, did I say that?

21                MS. LE:  Well, you didn't say that, ma'am; it was

22     the judge who said the United States.  And I think you meant

23     the United Way.  I just wanted to clarify what Ms. Brown meant.

24                THE COURT:  My mistake.  My mistake.

25                The information would be produced by the

1   prosecution, but the privilege is being asserted by the United

2   Way, right?

3               MS. BROWN:  (Nods head.)

4               THE COURT:  Yeah.

5               MS. BROWN:  That's my understanding.

6               THE COURT:  And that's -- understood.

7               Let me ask you this.  I guess, Attorney Hunter,

8   because you appear to be the point person on this, do you think

9   that these are the types of privilege claims that are going to

10  require an in-camera review by the Court or they're going to be

11  resolvable sort of an on the principle, you know, on the rules;

12  do you have a sense of that?

13              MR. HUNTER:  So it's hard to say, your Honor,

14  because obviously we don't have any of these documents because

15  United Way asserted privilege.

16              THE COURT:  Yeah.

17              MR. HUNTER:  So I'm not sure what the content of

18  them is.  I -- I -- I'm assuming these are documents that are

19  part of -- you know, the privileged part of the United Way's

20  internal investigation that they never waived.  So -- but I --

21  I haven't seen the documents, obviously.

22              THE COURT:  Yup.  Understood.  And -- and I guess,

23  you know, there's a couple issues there.  You know, this is

24  something that's not uncommon at all, especially in civil

25  litigation, and while some -- while some claims of privilege

1    are pretty easy for the Court to resolve just on the parties'

2    papers and the privilege log, just by -- you know, just by

3    reviewing that, frequently a Court winds up doing an in-camera

4    review because that's really the only way to resolve it and

5    that may be the case here.

6            I guess we can see.  And I guess we may have the

7    added wrinkle of the -- an added wrinkle of the issue about

8    if -- if a prosecution witness -- this may not have happened,

9    by the way, but if a prosecution witness, expert or fact, had

10   access to these documents and reviewed them, that's kind of a

11   wrinkle, right, because it could have -- it could have impacted

12   the testimony and who knows how it's going to play out.  I

13   don't know.

14           But provide the motion first.  See what you can

15   resolve.  And if you can't, you can't.  I'm not asking you to

16   take a long time because the idea is now to get this moving

17   again.  But it's probably worth just sharing the draft.

18           Okay.  Was there anything else you wanted to tell

19   me, Attorney Brown?

20           MS. BROWN:  No, your Honor, that's it.  So we will

21   get drafts to the government by tomorrow morning and as soon as

22   we get their position, we'll get them filed.

23           THE COURT:  Now, these -- this discovery -- I just

24   want to make sure I understand it right.  This goes to your

25   motion to dismiss for Brady violations, correct?

1        MS. BROWN:  No, it's based on -- our original

2  discovery motions were based on the idea that the government is

3  going to rely on at least, at a minimum, Meyer and maybe

4  Naviloff.  But it goes to sentencing.

5        THE COURT:  Oh, sentencing.  Okay.

6        MS. BROWN:  Yeah.  So it goes to sentencing.  It may

7  be related to that, but it specifically goes to sentencing and

8  that is the basis of the motion.

9        THE COURT:  Thank you for straightening me out

10  there.  Okay.

11        All right then.  I'll ask whoever's -- is there

12  anything -- before I get to my list of things here, anything

13  the prosecution wants to put on the record?

14        MR. HUNTER:  No, your Honor, only that we -- we

15  reached out about this to try to get some dates and -- hearing

16  dates set so that we can do what we need to do and serve

17  subpoenas and prepare accordingly.

18        THE COURT:  Yeah.  I appreciate that.

19        All right.  You say serve subpoenas, and that's

20  for -- what are you -- what specific procedures are you

21  thinking about serving subpoenas for; the stuff regarding

22  forfeiture and sentencing or other things?

23        MR. HUNTER:  Well, the -- we recently sent --

24  pursuant to the Court's order for discovery for forfeiture and

25  sentencing, we sent a letter requesting discovery.  This is in

1    process.  We haven't gotten a response yet.  So we haven't

2    served any formal legal process, but if necessary, if it came

3    to it, we'd probably subpoena documents in advance of the

4    forfeiture hearing and that sort of thing.

5              THE COURT:  Okay.

6              MR. HUNTER:  Documents the defense is relying on for

7    direct costs and meeting their burden on that and for those

8    issues.

9              THE COURT:  Okay.  All right.  Well, I guess then --

10   I guess the way I'd like to approach this then -- first thing I

11   think I want to resolve is this motion to dismiss for Brady

12   violations.  I think that's first things first, only because if

13   it's granted, it sort of moots out everything else.  So it

14   should be first.  That's the first -- that's the first hearing

15   that we'll have, if we have a hearing at all.  I might be able

16   to do that one on the papers, to be honest.

17             Do you want oral argument on that, either side?  If

18   you want it, I'll --

19             MS. BROWN:  The defense does, your Honor.

20             THE COURT:  You want -- okay.  So we'll -- I just

21   want to keep a list, Nayha and Charli.  I just want to sort of

22   keep a rough list of what we're going to do.  The first hearing

23   we're going to hold is oral argument on the motion to dismiss

24   for the Brady violations.  Okay.

25             And I guess just -- just to assume -- so we sort of

1    make a to-do list, let's assume for a moment that's not

2    granted.  Okay?  My next question is regarding the ineffective

3    assistance of counsel claims under Rule -- under Rule 29.

4            What are your -- do you anticipate, Attorney Brown,

5    presenting -- do you want an evidentiary hearing on the

6    ineffective assistance claim or do you just want to argue?

7            MS. BROWN:  It's really loud here right now.  Sorry

8    about that.

9            I -- I think we would want to have a hearing on

10   that.  I don't -- what I'll have to do is -- we haven't made a

11   decision about who to call as a witness at that hearing and we

12   can just have the usual court rules apply in terms of giving

13   notice, but we would prefer to have a hearing on those motions.

14           THE COURT:  But when you say hearing, do you want to

15   have evidence or do you want to just argue?  That's my

16   question.

17           MS. BROWN:  Yeah.  We -- we may want to present

18   evidence.  I don't want to commit to not presenting any right

19   now.  So we may -- we may present evidence.  But I --

20           THE COURT:  All right.  Well, I mean, when you know,

21   okay, let Charli know, because that -- the amount of time that

22   we would schedule is a lot different for one than it would be

23   for the other.

24           MS. BROWN:  (Nods head.)

25           THE COURT:  And let me just ask the prosecutors:  Do

1  you -- on the Rule 29 ineffective assistance, do you want any

2  rule -- the -- the Rule 29 and the Rule 33, do you want

3  evidence on that or are you good to go on argument?

4             MR. HUNTER:  I think we're good with argument, your

5  Honor.

6             THE COURT:  All right.  What I've got to figure out

7  with respect to the government then is whether I want any

8  additional briefing.  You know, you've briefed it on the

9  timeliness issue.  That's been your focus.  And that might be

10  sufficient, by the way, but it also might not be and if it's

11  not, I may end up asking you to address a couple other issues.

12  So I'll let you know.

13             MR. HUNTER:  Okay.  And if the Court wants more

14  briefing, we're happy to do it.

15             THE COURT:  Yeah, but I don't want to waste your

16  time.  I mean, people have put a ton of work into this already

17  and I don't want it to be busywork.  I only want to order it if

18  I need it.

19             Excuse me a second.

20             All right.  Then from there, of course, we go to

21  forfeiture and then we go to sentencing.  I think I want to do

22  this one step at a time then.

23             On the -- oh, I'm sorry.  Did you want to say

24  something, Matt?  No?

25             MR. HUNTER:  No, no.

1            THE COURT:  Okay.  So let's set a date -- well, we

2    can try to set a date on the motion to dismiss oral argument.

3            What's your preference?  Anybody.  I'll start with

4    anybody.  Go ahead, Matt; do you want to say something?  Do you

5    have a preference for when you want to do that?

6            MR. HUNTER:  No, no preference.  I guess -- I think

7    Mr. Davis and Ms. Le have a trial next week, so, you know,

8    perhaps the week after, if it works for them.  The earlier the

9    better, from -- as far as we're concerned.

10            THE COURT:  So the week of --

11            MS. LE:  We're done with trial this week, so next

12    week should be fine for the government.

13            Right, John?

14            MR. DAVIS:  (Nods head.)

15            MS. LE:  It's a short trial.  We'll be done by

16    Friday.

17            THE COURT:  Okay.

18            MR. HUNTER:  The week of the 9th?

19            MS. BROWN:  Are we talking about --

20            MR. HUNTER:  The week of the 9th works for us then.

21            MS. BROWN:  Are we talking about oral argument on

22    the motion to dismiss or everything?

23            THE COURT:  Just the motion to dismiss on -- for the

24    Brady violations.

25            MS. BROWN:  Okay.

1          THE COURT:  I think that's got to be first.

2          MS. BROWN:  Okay.  Let me look at my calendar.

3          THE COURT:  So next week is the week of the 9th.

4     Charli --

5          THE CLERK:  Yeah, what about Thursday, the 12th, in

6     the morning?

7          THE COURT:  What do you think?

8          THE CLERK:  Wednesday's a holiday.

9          MS. BROWN:  Oh, Wednesday's a holiday.

10          THE COURT:  It is?

11          MS. BROWN:  I have something in Hillsborough South

12     at 11:00, so -- and that's -- that's sort of a more serious

13     case.  I don't usually have a problem with continuing cases,

14     but this is a --

15          THE COURT:  No, no.

16          MS. BROWN:  Yeah.  So it's a pretty serious case and

17     there's a lot of people involved, so I'd hate -- so if we

18     started at 9:00 and we thought it was only -- you know, wasn't

19     going to go past 11:00, that's fine.

20          THE COURT:  You need to get down there by 11:00,

21     don't you?

22          MS. BROWN:  No, it's -- it's by video, so I don't

23     have to -- you know, it's -- that helps out a lot.  So I just

24     have to -- in fact, the way things have been going lately in

25     state court, they stack up seven or eight cases at a time and

1  so just because you're scheduled at 11:00 doesn't mean you go

2  at 11:00.  You could go -- I had a case last week where it was

3  three hours after it was scheduled.

4            THE COURT:  You know --

5            THE CLERK:  We could do nine o'clock, Judge --

6            MS. BROWN:  Yeah, that'll work.

7            THE CLERK:  --  on the 12th and that gives us a

8  couple of hours.

9            THE COURT:  Okay.  Okay.  That'll work.

10           MR. HUNTER:  That works for the government.

11           MS. LE:  Now, will we do this in person or is this

12  video?

13           THE COURT:  I'm okay with video, but if you guys

14  want -- yeah, let's go with video.

15           Yeah, I've got to go with video when I can,

16  everybody, just for court staff.  I really -- I've got to do my

17  best on that.

18           MS. BROWN:  The other thing, your Honor, and I may

19  have spoke too soon in agreeing to that, in our motion to

20  dismiss, we stated that we may call witnesses.  And that --

21  that might be hard to do with a -- a little over a week's

22  notice.  So --

23           THE COURT:  All right.  Can you --

24           MS. BROWN:  If it's by video it might be easier

25  because I don't have to physically get people up here.

1          THE COURT:  But if you're going to call witnesses,

2    the prosecution might want to be in the courtroom.

3          Do you -- do you want to share with us who you want

4    to call and for what?

5          MS. BROWN:  Well, it's in our motion.  I think

6    probably, number one, we talked about calling our expert, Jason

7    Sgro, S-g-r-o.

8          THE COURT:  Yeah.

9          MS. BROWN:  And we also may call Meyer and/or

10   Naviloff at the hearing as well.  So -- and I do think my

11   recollection from the motion is that we indicated in the motion

12   that we may call witnesses.  So I don't know that that -- first

13   of all, I don't know if it gives us enough time to get everyone

14   lined up and, secondly, it could be longer than a two-hour

15   hearing.

16         THE COURT:  Yup.  Yeah.  I should probably -- okay.

17   Well, then, let's schedule it then, assuming you are going to

18   call the witnesses, however I want to -- I just want to be

19   clear.  I should probably take a closer look.  You might not

20   really be entitled to call witnesses.  It's not that I want

21   to -- I begrudge you the opportunity, but if it's just not

22   necessary, it's just not necessary.

23         So -- but let's pick a different day, assuming we're

24   going to call them --

25         MS. BROWN:  Okay.

1            THE COURT:  -- just in case.

2            MS. BROWN:  Okay.

3            THE COURT:  Is there an open, like, day, Charli,

4    anytime in December -- in November?

5            THE COURT:  Full day?

6            THE COURT:  Or -- or a good half-day, like.

7            THE CLERK:  Yeah, there's a full morning on the

8    17th.

9            THE COURT:  Why don't we take that then.  All right,

10   Donna?

11           MS. BROWN:  Just looking.  Yeah, that's good.  I

12   have a status conference, which I definitely can move that.

13   So --

14           THE COURT:  What about the prosecutors; how does

15   that look for you guys?

16           MR. HUNTER:  That -- that works for me, your Honor.

17           THE COURT:  Okay.  So we'll go there, just -- but

18   I'm just reserving the right, Donna, I want to let you know,

19   that I might want to hear from witnesses.

20           MS. BROWN:  Okay.

21           THE COURT:  And if -- you know, if you disagree, you

22   can tell me why, but -- okay.  So that's that.

23           Do you want to -- now, that's the 17th.  Okay.  To

24   keep some momentum going here, how about the week of the 30th,

25   we schedule the hearing on the 29 and the 33?  What do you

1    think about that?

2              MS. BROWN:  The week of the 30th, which is mostly

3    the week of -- the first week of December.

4              THE COURT:  Yeah.

5              MS. BROWN:  Yeah.

6              THE COURT:  Yeah.  The following week I'm picking --

7    the following week I'm picking a jury.  I'm pretty sure it's

8    happening.

9              THE CLERK:  The afternoon of the 2nd is a

10   possibility.

11             THE COURT:  That's the Wednesday?

12             THE CLERK:  Wednesday, the 2nd.

13             THE COURT:  So that's not later, Chuck?

14             THE CLERK:  No, it doesn't -- you don't have it on

15   your calendar.

16             THE COURT:  Okay.

17             MS. BROWN:  So the afternoon of the 2nd would be the

18   ineffective assistance and the --

19             THE COURT:  Yeah, your legal arguments there, the --

20             MS. BROWN:  Yeah, legal argument.  Okay.

21             THE COURT:  Okay.  Let's -- let's -- let's just get

22   through those two --

23             MS. BROWN:  Okay.

24             THE COURT:  -- before we try to -- because we could

25   schedule everything -- you know, we could go on to forfeiture,

1    we could go on to sentencing, but if this apple cart gets upset

2    somehow, that's going to require all that to get redone and I'd

3    just as soon not make Charli go through all that.

4            So let's battle through these two, get decisions,

5    and then move on to the -- the regular formalities, if

6    necessary, Donna, of the criminal case forfeiture and

7    sentencing.  All right?

8            MS. BROWN:  Well, I mean, the other issue, your

9    Honor, is that, you know, we will be filing two discovery

10   related motions, either -- I mean, I would -- I would guess the

11   government could get back to us by -- you know, in the next

12   couple of days --

13           THE COURT:  Yeah.

14           MS. BROWN:  -- and then we'll file it.

15           THE COURT:  You're telling me that that's the

16   sentencing and the discovery might impact the sentencing date.

17           MS. BROWN:  That is correct, your Honor, but I -- I

18   don't know if you want to put some dates on for that, like when

19   the government's going to reply to that or --

20           THE COURT:  All right.

21           MS. BROWN:  That could kind of be floating out there

22   at the same time that we've got these other issues going on.

23           So, you know, I -- we're ready to file the motion.

24   We just need the government's position.  And, again, maybe they

25   can agree to some of it.

1         But do you want -- I don't know if you want to wait

2    and see what we're doing with the discovery or just kind of

3    have that being a parallel litigation at the same time?

4         THE COURT:  I'll just -- you know, if you file -- I

5    mean, if you don't resolve it, you file it, they'll object.

6    Let's put a seven-day objection on that.  Is that okay, guys,

7    or is that too short?  Is seven days enough, Matt?

8         MR. HUNTER:  That should be enough time.

9         THE COURT:  All right.  Because, look, I do

10   recognize -- and, you know, it's -- the prosecution's been

11   saying you weren't entitled to the discovery that I already

12   ordered.  Okay?  So their position is probably going to be kind

13   of a double -- a double argument:  A, none of this is required;

14   and, B, but under the law of your order, it's not required or

15   privileged.

16        I guess that would be kind of the -- what I would

17   expect:  A, it's not required at all; but, B, even under your

18   order, if it's required, we've complied or it's privileged.

19   So -- right?

20        And I'll just read this stuff and set something up

21   like this if we want to -- if I need to talk about it.  And it

22   might just be a matter of ordering an in-camera review.  All

23   right?  Because privilege is -- is privilege generally the

24   issue?  Is that what we're most talking about, Matt.

25        MS. BROWN:  It -- I'm sorry.

```
1                    THE COURT:  Anybody.  Anybody.

2                    MS. BROWN:  I was going to say --

3                    MR. HUNTER:  Yes.

4                    MS. BROWN:  I have the motion.  He doesn't.  That is

5     a big issue, and it's an issue -- and the Court kind of alluded

6     to it earlier -- of waiver where making a -- you know, making

7     one of the persons who is a carrier of the privilege at RSM be

8     an expert for the government.  So, you know, the big part of it

9     is an implied waiver argument that's going on.  Again, they'll

10    get a chance to look at it tomorrow morning and --

11                   THE COURT:  Yeah.

12                   MS. BROWN:  -- we don't need to argue it now.

13                   THE COURT:  It's a bit of an uncharted area for me,

14    I'll admit.  I mean, let me just counsel.

15                   Have you guys found any cases like that where

16    someone functioning as kind of a Rule 703 expert was also --

17    you know, had access to either -- you know, either privileged

18    information or information that wasn't necessarily provided in

19    discovery and the implications of that?

20                   MS. BROWN:  We have found a couple of cases, your

21    Honor.  It's a very unique situation.  And the Court alluded to

22    it earlier; a lot of this litigation happens in civil cases.

23                   THE COURT:  Yeah.

24                   MS. BROWN:  But the -- the analysis as to

25    attorney-client privilege is the same.  Either there's a waiver
```

1    of the privilege or there isn't a waiver of the privilege.  But

2    we have found some cases addressing this issue where the party

3    has waived the privilege by putting a certain witness on their

4    expert witness list.  So that -- I think that's going to be the

5    central issue of our argument.

6              THE COURT:  I see.  Yeah.  You know, the -- the --

7    the criminal discovery aspect of it is a little bit of a

8    different lens, of course, with Rule 16 discovery and then

9    constitutional discovery with Brady.  It does -- you know, it's

10   a little bit of a -- I've never really encountered it, to be

11   honest, at least that I can remember.

12             Anyway, okay.  I'll wait and see what you -- I'll

13   wait and see what you file.

14             I'm anticipating, though, based on this discussion

15   that those -- that motion practice doesn't really impact the

16   motion to dismiss you filed or the 29 and 33 motions.  I'm

17   assuming that that's not discovery -- that -- that goes to

18   sentencing, that doesn't go to this stuff, and we can decide

19   this stuff sooner rather than later.  All right?

20             Nayha, did you have any questions?  Nayha is working

21   on the case with me as Alex is gone.

22             Nayha, any questions?

23             THE LAW CLERK:  No, I don't have any questions.

24             THE COURT:  Thank you.  All right.

25             What about you, Counsel, any questions for me?

1    Anything you want to add before we wrap?  No?

2               MR. HUNTER:  No, your Honor.

3               THE COURT:  Now, a couple of you guys are trying a

4    case next week or this week with Judge McAuliffe.

5               MS. LE:  Tomorrow.  John and I are, Judge.

6               THE COURT:  Okay.  What kind of case is it?

7               MS. LE:  It's a drug and gun case.  We should be

8    done on Friday.

9               THE COURT:  All right.  Well, another COVID trial.

10   Hopefully it goes well.  You know, for what it's worth, we

11   really are trying to get trials in because if the numbers stay

12   on track, we're going to be into -- in 2021 without the ability

13   to do trials at all.  And that's -- so it's really important to

14   get the ones done that we can because people have been waiting

15   for trials and understand we're trying to work with you to get

16   trials in.

17              MR. HUNTER:  Yeah.

18              THE COURT:  That case I have, I think it's Joach,

19   the one I have in early December.  You know, to the extent --

20   to the extent you're in contact with Joach, please let him know

21   that, you know, it is my intention to pick that jury and hold

22   that trial.  All right?  And we'll get on with it.

23              Okay, everybody.

24              Charli, are you all set?  Anything you wanted to get

25   resolved?

1          THE CLERK:  No, I guess I'd just like some

2   clarification on whether it's going to be a, you know,

3   videoconference or in court or will counsel let me know?

4          THE COURT:  Well, it's going to be -- you can assume

5   for now it's going to be video.

6          THE CLERK:  Got it.

7          THE COURT:  If -- let me ask this question, Matt,

8   Cam, John, if you know.  Suppose Donna decides tomorrow, I want

9   to call witnesses in the Brady motion and I say okay.  Are you

10  going to want that in the courtroom rather than Zoom or are you

11  going to be okay on Zoom?  And I -- and there's no wrong

12  answer.

13         MR. HUNTER:  You know, we haven't talked about it.

14  I'll say my -- my thinking is Zoom is fine, but I'll defer to

15  my colleagues if they have a different view.

16         MR. DAVIS:  I would agree, Judge.  I think we're

17  going to be fine with Zoom.

18         THE COURT:  Okay.  I appreciate everybody being so

19  cooperative.  Thank you.

20         Okay.  Thank you, everybody.  And -- so I'll be

21  waiting for stuff, reviewing stuff, but if things arise in the

22  meantime, please don't hesitate.  It's better to get stuff

23  resolved than to let it fester.  Okay?  Thank you.

24         MS. BROWN:  Thank you.

25         MR. HUNTER:  Thank you, your Honor.

1                    (Proceedings concluded at 5:01 p.m.)

C E R T I F I C A T E


        I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate transcription

of the within proceedings, to the best of my knowledge, skill,

ability and belief.


Submitted: 8/27/2021          */s/  Liza W. Dubois*
                             LIZA W. DUBOIS, RMR, CRR