**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 5-4-2022**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * *
                                  *
UNITED STATES OF AMERICA          *
                                  *   18-cr-192-01-JL
           v.                     *   December 23, 2021
                                  *   11:06 a.m.
       IMRAN ALRAI                *
                                  *
* * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF CHAMBERS CONFERENCE
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

APPEARANCES:

For the Government:        John S. Davis, AUSA
                          Matthew Hunter, AUSA
                          U.S. Attorney's Office


For the Defendant:         Anthony Sculimbrene, Esq.
                          Gill & Sculimbrene, PLLC



For Intervenor:            John J. Commisso, Esq.



Court Reporter:            Susan M. Bateman, RPR, CRR
                          Official Court Reporter
                          United States District Court
                          55 Pleasant Street
                          Concord, NH 03301
                          (603) 225-1453

```
 1                      P R O C E E D I N G S
 2              THE CLERK:  The Court is now in session and has
 3      before it for consideration a conference in criminal case
 4      18-cr-192, United States versus Alrai.
 5              Counsel, plea identify yourselves for the record
 6      starting with the government.
 7              MR. DAVIS:  John Davis for the government.
 8              MR. HUNTER:  Matt Hunter for the government.
 9              MR. SCULIMBRENE:  Anthony Sculimbrene for Mr. Alrai.
10              THE COURT:  And I see on the screen Attorney
11      Commisso who is the counsel for one of the victims in the
12      case -- the alleged victim in the case.
13              All right.  We're on the record here at the
14      prosecution's request, which is always available by the way.  I
15      should let everybody know, including newly appointed defense
16      counsel, that -- you know, sometimes I'll hold a conference off
17      the record, but anytime you want a record, you get that just by
18      requesting it.  So never hesitate if you want a record, all
19      right?
20              I did expect the defendant to be on this call, but
21      it's not a problem that he's not.
22              I just wanted to let counsel know that I had
23      provisionally appointed defense counsel for the defendant in
24      this case, all right?  Mr. Sculimbrene who is on the screen
25      with us.
```

1    I wanted to explain where I was procedurally with

2 this, number one; and number two, give the defendant the

3 opportunity to talk to his newly appointed counsel about it.

4    There was a motion filed by prior counsel, retained

5 counsel Attorney Brown, to be appointed as CJA appointed

6 counsel, and the Court kept that under advisement because the

7 Court's position is without compliance with the pending

8 repatriation order it is at least difficult, if not impossible,

9 to evaluate whether the defendant is entitled to CJA appointed

10 counsel.

11    And the Court was considering something that I think

12 the prosecution actually also suggested in one of its recent

13 filings, which was a sort of provisional appointment to allow

14 defense counsel to at least explore that issue, perhaps

15 supplement the record or perhaps make an argument, whatever,

16 regarding that issue that to the Court's knowledge has not been

17 resolved.

18    Prior defense counsel made the point I think in our

19 last hearing together, I don't even remember what the topic of

20 the hearing was, but it was a conference or a hearing where she

21 said, you know, that there's never been a finding that the

22 defendant had not complied with the repatriation order, and

23 there has been such a finding.  It's in the Court's order

24 declining to appoint CJA counsel.

25    So I just wanted to sort of maybe put a, I don't

1    know, time this out, this effort out, so we have some temporal

2    goal to shoot for to keep the case on track and at least

3    account for any delays or other problems that we're going to

4    have.  That's how we got here.

5              Mr. Sculimbrene, I doubt you've made any contact

6    with Mr. Alrai yet, have you?

7              MR. SCULIMBRENE:  I needed to talk to Attorney Brown

8    before I talk to him.

9              THE COURT:  Sure.  By the way, I would like you, Mr.

10   Sculimbrene -- and I'll make a record of this next time we're

11   on the record together.  I would like you to explain the

12   following to your counsel -- to your client, Mr. Alrai.

13             Mr. Alrai actually suggested a couple of names for

14   CJA appointed counsel in one of his recent filings.  I think it

15   was a pro se filing.  Normally CJA appointments are made on a

16   random basis.  We have a wheel that the court runs internally

17   that randomly selects CJA counsel.

18             Frankly, I didn't want to do that in this case.  I

19   wanted to have some role in selecting counsel because although

20   we have an excellent CJA panel of very competent counsel, this

21   is an especially difficult case to defend.  Not so much because

22   of the somewhat tortured procedural history here but more

23   because it's a fairly voluminous record white-collar crime

24   case, and it's not every attorney that is especially

25   well-equipped or even willing to undertake that kind of

1    representation really.

2           So this is a little bit special.  So I reviewed the

3    panel.  Certain members of the panel have conflicts.  Mr.

4    Sculimbrene is one of the people I think on our panel who is

5    well qualified for this type of work, willing and well

6    qualified, which is a combination that's important, so I asked

7    him.  I contacted him and asked him if he would be willing to

8    accept an appointment.  I explained that it would likely be

9    provisional at the outset.

10          So I wanted everyone to be aware of that, and I

11   wanted Mr. Sculimbrene's client to be aware of that.  When you

12   explain that to him, Mr. Sculimbrene, if there's a problem, I

13   know you'll notify the Court, all right?

14          MR. SCULIMBRENE:  Yes, your Honor.

15          THE COURT:  And I'll be asking that probably the

16   next time we're together on the record.

17          MR. SCULIMBRENE:  Yes, your Honor.

18          THE COURT:  Let me ask the prosecutors.

19          So you've heard what the Court did there, which is a

20   little bit unusual, instead of the usual random CJA appointment

21   selection process.  Do you have any objection to that?

22          MR. DAVIS:  No objection, Judge.

23          THE COURT:  Okay.  Thank you, counsel.  All right.

24          I guess the only other thing I would like to

25   accomplish today before I ask you if there's anything you would

1    like to accomplish is this.  Should we set a time to sort of

2    revisit this issue?  And I guess if we should, I see you

3    nodding your head, Mr. Sculimbrene, what should that time

4    period be for you to review the issue and make some type of

5    response, if any, to the Court?

6            MR. SCULIMBRENE:  Your Honor, one of the things that

7    I had done -- so immediately after being appointed two days ago

8    I reached out to Attorney Davis and I was -- well, the first

9    thing is I read the Brady order and then I reached out to

10   Attorney Davis.  Attorney Davis informed me that he had ethics

11   counsel.  I don't have the filing of the ethics counsel.  I do

12   know that there is a plan to file a motion to dismiss for

13   prosecutorial misconduct with prejudice and that that's in the

14   works.  Given that that's in the works, I felt that the matter

15   was substantially similar, and therefore, under Rule 4.2 of New

16   Hampshire Code of Professional Ethics, I declined to talk to

17   Attorney Davis after he told me he was represented by counsel.

18           I then reached out to his ethics counsel who is Mark

19   Attorri.  Unfortunately, Attorney Attorri has been appointed to

20   the bench, but he was apprised of what the issue was and he was

21   going to do some research and speak with his counsel and then

22   try to figure out what the next steps were.

23           After I did that, I then reached out to Attorney

24   Brown and Attorney Brown laid out a bunch of steps that she was

25   about to take on Mr. Alrai's behalf in terms of pursuing the

1  prosecutorial misconduct issue, and she also talked to me about

2  repatriation.

3          So the way that I'm looking at this case is sort of

4  like three chunks.  There's, like, the --

5          THE COURT:  Let me just ask for a clarification.

6          MR. SCULIMBRENE:  Yes.

7          THE COURT:  When you say that she's about to take,

8  do you mean that she was about to take had she not withdrawn?

9          MR. SCULIMBRENE:  Yes.  Correct.

10          THE COURT:  Okay.  Go ahead.

11          MR. SCULIMBRENE:  So the way that I see the case is,

12  like, three chunks.  There's the repatriation issue which the

13  government obviously has a strong interest in pursuing and

14  resolving immediately.  Then there's the next thing, which

15  would be the prosecutorial misconduct issue which is quite

16  frankly incredibly daunting given that there is a pending

17  ethics complaint and the government lawyers have counsel.  That

18  is just going to be a very complex logistics issue, and some of

19  the things that have happened already made me concerned that

20  that issue is just going to slow everything down in a way that

21  I don't really want it to slow down because I don't think that

22  helps anybody.  And then once that issue is dealt with I think

23  the next step is preparing for a retrial, but I think that it

24  makes sense and if anybody disagrees, they're welcome to tell

25  me because I don't know any -- very little.

1          Donna read through the docket report, read through

2    key motions, and then talked to Attorney Davis and Attorney

3    Attorri.

4          If we deal with the repatriation thing first, I

5    think that's probably the gatekeeping issue for whether he gets

6    counsel.  I also think that quite frankly is the easiest issue.

7          The prosecutorial misconduct thing is sort of

8    mind-boggling to me.  I've never been in this situation before.

9    I mean, I've had issues with prosecutors and discovery, but

10   nothing -- I've never seen anything like this, and it's just

11   such a thicket, but I prefer to deal with repatriation first.

12         So what I would propose, if the government is okay

13   with this, is to have them deliver a list of accounts and funds

14   that they believe are subject to the repatriation order and

15   then, you know, make some investigation to determine if those

16   funds are still existing and if they are still existing, what

17   the mechanism is to get them back.

18         My understanding from Attorney Brown and from

19   looking at some of the filings is that Mr. Alrai has a very

20   strong close relationship with Attorney Brown.  I've known

21   Attorney Brown for years.  I've worked with her at the public

22   defender.  She engenders fierce loyalty in her clients to the

23   point where as a new lawyer if I walked down through the

24   courtyard at New Hampshire State Prison and I told them that I

25   was there on a case for Donna Brown, the inmates would hold the

 1    doors open for me.

 2              So I'm fairly certain given how Donna creates client

 3    relationships that if Mr. Alrai had any money left, he would be

 4    paying Donna, and my understanding is that that's not happening

 5    which is why she asked for a CJA lawyer appointment.

 6              The other thing that Attorney Brown told me was

 7    that, you know, he has outstanding debts on his house that he's

 8    not able to pay.  So my guess is, and this is just based on the

 9    limited information I have, that even if the government can

10    show that he sent funds overseas, that they're probably gone by

11    now.  But if they're not, then if the government tells us where

12    they are and the law requires him to discharge those funds to

13    the government or at least, you know, puts what's the

14    equivalent of a criminal attachment on those funds, I don't

15    have any issue with that and, you know, I would obviously

16    advise my client in that nature, that would then turn to the

17    issue of what happens with the CJA appointment.

18              So if he has funds and they're subject to the

19    repatriation order, what's left after that to hire counsel may

20    qualify him for a CJA lawyer or not depending on how much money

21    there is.

22              THE COURT:  Yeah.

23              MR. SCULIMBRENE:  I mean, I don't know if that's an

24    approach that seems commonsensical, but I wouldn't need that

25    much time.  I mean, if the government has an idea of what the

1   money is and where it's at, then that -- you know, like the

2   stuff that I've seen so far, and I'm sure there's vastly more

3   in Donna's discovery, but a lot of it says that, you know, they

4   know they sent these funds over, they know that they were in

5   banks in Lahore, Pakistan, but that was, you know -- that's not

6   timely information now at the end of 2021.  That was, like,

7   timely in 2018.

8              So if they know that there's funds out there, then

9   we'll do our very best to go get them and put them under the

10  repatriation order, and then we can move on to the next two

11  steps after that.

12             THE COURT:  Right.  And of course there's

13  repatriation and then there's an accounting that would be

14  something maybe short of repatriation but at least something.

15             MR. SCULIMBRENE:  Right.

16             THE COURT:  All right.  Well, thank you for that.

17  All right.  I think the prosecutors do have that information

18  that you're looking for.

19             MR. SCULIMBRENE:  Okay.

20             THE COURT:  I think they've put it on the record

21  before, but I think for convenience sake it would be good to

22  have them provide it to you to get you started.

23             Let me ask -- so knowing that though, I have a

24  couple questions based on what I've heard because there's

25  information now that I was not aware of.

1      MR. SCULIMBRENE:  Sure.

2      THE COURT:  I mean, I think there already is pending

3  a motion to dismiss with prejudice.  I haven't ruled on it, but

4  I've considered it.  It sounds like you're talking about a new

5  one based on prosecutorial misconduct, not based on a Brady

6  violation, right?

7      MR. SCULIMBRENE:  So I think that one of the --

8  looking at the case law one of the steps that Donna would have

9  to prove -- Attorney Brown would have to prove is that there

10  was a history of misconduct in order to get the motion to

11  dismiss with prejudice.

12      I know that there is another pending case.  Donna

13  was allowed to intervene in that case to gain access to

14  information about Attorney Davis's alleged misconduct in that

15  case, and that case is under seal.

16      So my plan was to ask the Court to essentially step

17  into Donna's shoes while she's off the case to get that

18  information to deal with the next steps in the motion to

19  dismiss.

20      My understanding is that you do not have all of the

21  facts for the motion to dismiss because Attorney Brown does not

22  yet have all the facts based on this other independent case

23  where Judge McCafferty allowed her to intervene.

24      THE COURT:  All right.  Thank you.

25      So for a deadline for you to make a filing vis-a-vis

1    repatriation is 30 days enough?

2              MR. SCULIMBRENE:  The only reason I would say not 30

3    days is because I'm essentially going to lose the first ten to

4    Christmas and -- I mean, I know he's Muslim and I don't know

5    what that's like, but I'm not sure how easy it is going to be

6    to build a client relationship given the facts of this case.

7              I mean, my understanding from Attorney Brown is that

8    Mr. Alrai has the sense that he's sort of been through the

9    wringer.  So I want to make sure in the first instance that he

10   understands that I'm appointed to him and that I'm trustworthy,

11   and then I think we can start talking.

12             So if you give me 45 days, that's not a ton more

13   time, but it basically, you know, accounts for the next ten

14   days being lost.

15             THE COURT:  Understood.

16             Kellie, when you have a minute, can you just sort of

17   map out 45 days for me and tell me when that is?

18             THE CLERK:  Yes, your Honor.

19             THE COURT:  Now, let me ask you this question in the

20   meantime.  So I wasn't aware that AUSA Davis has counsel.  Is

21   it --

22             AUSA Davis, is it just you who has counsel?

23             I'll talk to Mr. Hunter because he's unmuted.

24             Mr. Hunter, is it only AUSA Davis that has counsel

25   or your whole team?

1          MR. HUNTER:  Only Mr. Davis is my understanding,

2     your Honor.

3          THE COURT:  Okay.  So, I mean, if that's the case,

4     I'm not sure how much it really complicates this.  You know, I

5     mean, as long as there's people you can communicate with

6     directly, it seems to me that that should be able to proceed.

7          Is Attorney Le still on the case as well?

8          MR. HUNTER:  Yes, your Honor.

9          THE COURT:  So you've got a couple options there,

10    Mr. Sculimbrene, and they're both very, very responsive

11    lawyers, as is Mr. Davis, when it comes to dealing with

12    counsel, okay?

13         MR. SCULIMBRENE:  Yes, sir.

14         THE COURT:  I don't have cases where I have lawyers

15    saying they're slow to provide discovery or slow to be

16    responsive or slow to negotiate plea deals or anything like

17    that.  Okay.  Good.

18         All right.  So 45 days is a Sunday.  Let me see.  So

19    let me just look at this.  So the 7th -- how about the 7th of

20    February, Mr. Sculimbrene, for you to make a filing vis-a-vis

21    your repatriation issue?

22         MR. SCULIMBRENE:  Yes, your Honor.

23         THE COURT:  Mr. Hunter, did we have a -- I have a

24    vague memory.  I should know this, but I don't right now

25    offhand.  We picked a new trial date, didn't we?

1          MR. HUNTER:  We did.  It was in January which, you

2    know, obviously it's been continued both because of counsel's

3    withdrawal and COVID.

4          THE COURT:  Wait a minute.  January of 2022?

5          MR. HUNTER:  2022.  It was the last trial date I'm

6    aware of.

7          THE COURT:  I thought we had actually already moved

8    that out, but that's okay.  That's okay.  All right.  Well,

9    that's not going to happen, obviously.

10          Okay.  All right.  Well, yeah, to the extent --

11    look, I'm not going to order it, but to the extent, Mr. Hunter

12    and Mr. Sculimbrene -- Mr. Sculimbrene's appointment right now

13    is provisional vis-a-vis the repatriation issue, but any

14    discussions that you want to have regarding scheduling after

15    that, please undertake it.  I'm open to it.

16          MR. SCULIMBRENE:  Okay.

17          THE COURT:  Now, if don't want to for some reason, I

18    understand.  If either of you don't want to for some reason, I

19    get it, but if you can see your way clear to do it, please

20    communicate with each other, all right?

21          MR. SCULIMBRENE:  I would prefer to have a schedule.

22    I think I've said this in every proceeding I've had.  I have

23    two substantial private jury cases.  I have a sexually violent

24    predator case and a double homicide all on for 2022.  So I

25    would like to pin down my calendar as much as possible.

1          THE COURT:  Okay.  Give me a moment.

2          (Pause.)

3          All right.  Good.  All right.  We've covered my

4    issues.

5          Let me just ask counsel, I'll start with Mr. Hunter,

6    are there any issues you would like to raise for the

7    prosecution's side?

8          MR. HUNTER:  No, your Honor.

9          THE COURT:  All right.

10          Mr. Sculimbrene, anything else you want to talk

11    about today?

12          MR. SCULIMBRENE:  There are two other things I want

13    to talk about.

14          The first thing is my hope is that I can just sort

15    of take the temperature down a little bit.  Reading through the

16    pleadings, it seems like this got more adversarial than an

17    adversarial system needs to be.  So my hope is I can just sort

18    of take everything down a little bit and figure out what

19    matters.

20          To that end, if the repatriation issue is dealt with

21    and counsel remains on, do you envision it going back to

22    Attorney Brown for her appointment under the CJA or would

23    you -- how would that work?  Because I know Attorney Brown

24    wants to do it.

25          THE COURT:  Well, but she has moved to withdraw and

1  asserted that the money was not the grounds she's withdrawing.

2          MR. SCULIMBRENE:  Okay.  All right.

3          THE COURT:  I don't see how I could do that.  Unless

4  I'm misremembering something, she said there were other issues

5  regarding her working relationship with the prosecutors that

6  made it basically impossible for her to be effective.

7          MR. SCULIMBRENE:  Yes.  That makes sense to me.  I

8  just wanted to be sure everybody was clear on that.

9          The other thing is I feel like if there is an

10  appointment beyond the repatriation issue, I think that I would

11  ask the Court for a number of things.

12          I would ask for co-counsel.  My understanding is

13  there's something like 750,000 pages of relevant discovery.

14  That's two terabytes of data.

15          Then I would probably ask for a digital forensics

16  expert.  Typically in cases like this I would use a company out

17  of Boston called HaystackID.  I've had a relationship with

18  them.  They do really good work.

19          And then a forensic accountant at the very least.  I

20  don't know if the Court had contemplated those appointments.

21          The one thing I don't want to do is I don't want to

22  use the people in the past.  My understanding after talking to

23  Attorney Brown is that there were some frictions between people

24  in the past.

25          THE COURT:  Wow.  I mean, I did suggest that in a

1    prior order that, you know, for the second -- you know, when I

2    denied CJA counsel, I said I would be open to granting CJA

3    funds to retain experts, all right, and suggested, without

4    ordering, that perhaps prior utilized experts would help save

5    some resources because, you know, I didn't know that there were

6    any allegations about the prior experts.  You know, the

7    allegation was that they didn't get the right information, but

8    not that the experts -- anyway, it sounds like you heard

9    something different, and I would want to be sensitive to your

10   requests of course.

11            MR. SCULIMBRENE:  The issue is -- you know, I'm

12   playing a game of telephone because, you know, Donna is not the

13   first, second, third, fourth, or fifth attorney on this case,

14   and she wasn't trial counsel and so -- you know, if it comes to

15   the point where we're -- obviously, I wouldn't file a motion

16   before I talk to the experts and see if they would be okay, but

17   my understanding was that the performance at trial was

18   lackluster, and I don't know if it's because the information

19   was withheld or if it was because there was a conflict among

20   personalities or both.

21            THE COURT:  All right.  Yeah, news to me.  Anyway,

22   the bottom line is this.  Your point that you're going to need

23   more resources to defend this case is obviously expected.

24            MR. SCULIMBRENE:  Okay.

25            THE COURT:  And I'll evaluate those requests and

1    grant them in the normal course.

2         Let me ask this question.  When you say co-counsel,

3    would you be considering your partner, your law partner, or

4    someone different from the panel?

5         MR. SCULIMBRENE:  If Attorney Gill did it, it would

6    probably shut down our firm and I don't know if we could afford

7    that.

8         THE COURT:  Okay.

9         MR. SCULIMBRENE:  If we had another attorney, which

10   we're striving to do in the next two years, that would be

11   great.

12        One person that I had contemplated was somebody that

13   I worked with at the public defender who is in the process of

14   applying to be on the panel.  He was invited by Judge

15   McCafferty, him and his law partner.  His name is Steve

16   Rosecan.  He's a public defender.  I actually was on the hiring

17   committee that hired him.  He worked in my office for years.

18   He is somebody that does these kind of, like, complex, you

19   know, deep-dive cases all the time, and he's somebody who I

20   think is, you know, respectful and moves at a pace that I find

21   to be appropriate.  Like, I try not to file continuances.  He

22   does the same thing.  So, you know, my hope is that he'll apply

23   and that he'll be on the panel by the time the repatriation

24   issue is dealt with and then ask the Court to appoint him.

25        I ask -- Attorney Odland, he's another person I've

1   worked with who I think could handle a case like this.

2   Unfortunately, right now he's not able to take any cases.

3               The other people on the panel that I contemplated

4   are people that I know have conflicts.  There's just so many

5   people that have conflicts in this case because of how many

6   firms have touched it, and then the rest of the people on the

7   panel I either don't know or know that they're not taking new

8   cases because they're kind of winding down their practice.

9               THE COURT:  Okay.  Well, we'll cross the bridge when

10  we come to it, but let me put it this way.  Nothing you're

11  saying surprises me or dismays me.  It seems to be predictable.

12              MR. SCULIMBRENE:  Okay.

13              THE COURT:  I know you said you had nothing to

14  raise, Mr. Hunter, but I guess I should ask -- I've never been

15  in a situation like this where one of the prosecutors has

16  counsel or any lawyer has counsel.

17              If you're comfortable talking about it, Mr. Davis,

18  just like what it means for the case, for this case in terms of

19  your ability to do the job, I would like to understand.

20              Does that mean you're not in a position to

21  communicate with adverse counsel or the Court or something that

22  I should be aware of?

23              MR. DAVIS:  Judge, I don't entirely know.  As I

24  think the Court knows, Donna Brown filed an ethics complaint

25  against me in the state bar based on the Court's order in July.

1    It alleges numerous violations of rules of professional

2    conduct.

3              I have retained counsel to represent me, Mark

4    Attorri.  For at least another week he's my lawyer.  What I do

5    next I'm not sure.

6              As to this -- as to the issue of contact with

7    represented persons, I would have thought that it isn't

8    anyone's business what is happening in a docketed matter before

9    the Attorney Disciplinary Office and it --

10             THE COURT:  I'm not making that inquiry at all if

11   that's what you're wondering.

12             MR. DAVIS:  No, I'm not suggesting that.  I'm just

13   saying that it is presumably a confidential matter.

14             THE COURT:  Sure.

15             MR. DAVIS:  It is a matter for the Department of

16   Justice I think to decide whether my personal interest in

17   defending the matter before the ADL raised a conflict with my

18   representing my client in the Alrai case, and they have

19   certainly -- the Department of Justice at least preliminarily

20   made that assessment way back when, when Donna Brown filed the

21   grievance against me.

22             THE COURT:  I see.

23             MR. DAVIS:  And the Department of Justice decided

24   that I could remain on the case.  So I had not thought there

25   was a further problem about conflicts.

```
 1                    THE COURT:  Okay.

 2                    MR. DAVIS:  If there's another motion coming based

 3       on the Craig case, of course that may complicate things.  I

 4       don't know.

 5                    THE COURT:  Yep.  All right.

 6                    MR. DAVIS:  So I'm --

 7                    THE COURT:  I'm just asking about this case.  My

 8       only question is -- it sounds as if you had some reservations

 9       about communicating with Mr. Sculimbrene based on all that --

10       or what?  Maybe I misunderstood.

11                    MR. DAVIS:  Actually, I did not.

12                    THE COURT:  Oh, I see.

13                    MR. DAVIS:  I've been pretty open about what I'm

14       experiencing here with people.

15                    THE COURT:  Okay.

16                    MR. DAVIS:  But Mr. Sculimbrene to his credit and

17       wanting to be careful raised the Rule 4.2 issue.

18                    THE COURT:  Oh.

19                    MR. DAVIS:  And so I didn't try very hard at least

20       to dissuade him, and he called my lawyer.

21                    THE COURT:  I get it.  Thank you for clarifying.

22                    I should have listened more carefully, Mr.

23       Sculimbrene.  I get it.  Okay.  Good.

24                    All right then.  So February 7th we'll hear from you

25       folks.  If you can talk schedule in the meantime, even if it's
```

1   just tentatively, you know, I would appreciate it, and I'll

2   await your filings.

3              MR. SCULIMBRENE:  Yes, your Honor.

4              THE COURT:  Nayha, is there anything you wanted to

5   cover or wanted me to cover today that I have neglected?

6              THE LAW CLERK:  I don't have anything to add.

7              THE COURT:  All right everyone.  I hope you have

8   good holidays, all right, and I will look forward to hearing

9   from you in the early part of the new year.

10             MR. SCULIMBRENE:  Yes, your Honor.

11             Thank you, your Honor.

12             MR. HUNTER:  Thank you, your Honor.

13             (Conclusion of hearing at 11:35 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3

 4              I, Susan M. Bateman, do hereby certify that the

 5    foregoing transcript is a true and accurate transcription of

 6    the within proceedings, to the best of my knowledge, skill,

 7    ability and belief.

 8

 9

10    Submitted:  2-3-22         /s/   Susan M. Bateman _____
                                 SUSAN M. BATEMAN, RPR, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```