UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                *
                                *   No. 1:18-cr-00192-JL-1
            v.                  *   May 26, 2022
                                *   2:10 p.m.
                                *
IMRAN ALRAI,                    *
                                *
                Defendant.      *
                                *
* * * * * * * * * * * * * * * * *


TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE JOSEPH N. LAPLANTE


APPEARANCES:


For the Government:      AUSA Cam T. Le
                        AUSA Matthew Hunter
                        United States Attorney's Office


For the Defendant:      Anthony Sculimbrene, Esq.
                        Gill and Sculimbrene



Court Reporter:         Brenda K. Hancock, RMR, CRR
                        Official Court Reporter
                        United States District Court
                        55 Pleasant Street
                        Concord, NH 03301
                        (603) 225-1454

1                    P R O C E E D I N G S

2           THE CLERK:  The Court has before it for consideration

3    today a motion hearing in criminal case number 18-cr-192-01-JL,

4    United States of America versus Imran Alrai.

5           THE COURT:  All right.  We're here on a motion to

6    continue this trial, which is a grant of a new trial for the

7    defendant in this case.  I've got some questions that I wanted

8    to ask.  Before I do, is there any new information, anything

9    that's developed since your filings -- I've read your

10   filings -- that you want me to know about?

11          MR. HUNTER:  No, your Honor.

12          MS. LE:  (Shaking head).

13          THE COURT:  Okay.  So, okay, I'll ask my questions,

14   and then you can tell me anything else you want me to know.

15          What's the status of discovery?  Your supplemental

16   filing -- kind of update me a little bit.  Where are we at?

17          MR. SCULIMBRENE:  So, I think that everything that the

18   government has in their possession has been turned over as of

19   May 9th.  So, we should have both the discovery from the

20   original trial, the hard drive, which was -- a large portion of

21   this has been dealing with this hard drive.

22          THE COURT:  Yeah.

23          MR. SCULIMBRENE:  And then there was a second batch of

24   information produced after the hard drive.  The one thing I

25   want to state on the record, and I put this in my motion on

1    purpose, the paralegal for the U.S. Attorney has been doing

2    incredible work.  I've dealt with her on a number of cases,

3    but, like, this is not the normal ask for somebody.

4              THE COURT:  Sure.  Who's that, Diane?

5              MR. HUNTER:  That's Maria, your Honor.

6              MR. SCULIMBRENE:  Just absolutely top notch.  The

7    eDiscovery Tool provider, the budgeting attorney for the First

8    Circuit and myself, we've all commented on how well things have

9    been organized and provided.

10             THE COURT:  Gotcha.  So, your view is everything in

11   their possession has been turned over, as far as you know?

12             MR. SCULIMBRENE:  That is correct.

13             THE COURT:  All right.  What about your efforts to get

14   another attorney?  Was there something you wanted to tell me?

15             MR. HUNTER:  Your Honor, just to clarify, because we

16   did reproduce all the discovery we had within three days of Mr.

17   Sculimbrene being appointed, the 2-terabyte hard drive contains

18   forensic images of computers that, once he informed us that he

19   couldn't access it, we had it imaged or recopied and got it to

20   him promptly.

21             The other, the production that came in May was when

22   Mr. Sculimbrene raised concerns about the cost of processing

23   and uploading to a review platform, and I will, again, take my

24   hat off to Maria, decided to reprocess the discovery in a load

25   file.  It was basically the same discovery we'd already

1   produced, just organized differently so it could be more easily

2   adjusted into our review platform for defense counsel.

3           So, we had already produced the discovery in February.

4   I just wanted to make that clear.  It's just reproducing it in

5   a format to, hopefully, aid counsel's review.

6           THE COURT:  Thank you.  What about your attempts to

7   get co-counsel?

8           MR. SCULIMBRENE:  So, I'm sure the Court remembers,

9   but I had --

10          THE COURT:  You had persuaded Ed Cross --

11          MR. SCULIMBRENE:  I had persuaded Ed Cross to come out

12  of retirement.  Ed Cross, within less than a month of agreeing

13  to come on the case, he had a nephew die and his sister going

14  through long-term hospital care for serious conditions.  He was

15  unable to stay on.

16          I then reached out to a couple of other people, as I

17  had done before, and those were unsuccessful.  I tried to

18  persuade Jeff Odland to come on, who's on the CJA Panel.  I

19  tried to persuade another defense lawyer who's applying for CJA

20  Panel.

21          THE COURT:  Wasn't Kirsten Wilson part of the deal for

22  a while?

23          MR. SCULIMBRENE:  Kirsten is the person who has agreed

24  to do it now, so she is on.  We had a third attorney who was

25  going to help us with discovery who's done similar things in

1    civil cases, Greg Silverman.  Unfortunately, Attorney

2    Silverman, because of the load at his office, has been unable

3    to do that.  So, now it's back to Attorney Wilson and I.  I can

4    tell you that I've also reached out to Attorney John Newman to

5    see if he would be willing to come on board for trial.

6    There's, I think you remember, over 600 exhibits.  It's not a

7    normal trial.  This is a paper trial that will be challenging

8    to try and hold everyone's attention in front of a jury.

9              THE COURT:  My memory is Tim Harrington handled it.

10    That doesn't mean you need to do it alone.  If you think it's

11    better done a different way, I have an open mind about it.  I'm

12    just saying that -- I don't know.  I've seen a fair number of

13    trials, and I know this thing has taken on a life of its own,

14    but I'll be honest, I don't see it as particularly complex.  I

15    can see how some of the defense theories you're describing --

16              MR. SCULIMBRENE:  Yes.

17              THE COURT:  -- could add complexity --

18              MR. SCULIMBRENE:  Yes.

19              THE COURT:  -- because some of them involve things

20    like the value of things, right?

21              MR. SCULIMBRENE:  Correct.

22              THE COURT:  So, I understand.  It's just that, I don't

23    want to describe this trial like it's, you know, the Enron

24    thing.  It's not.

25              MR. SCULIMBRENE:  It's not.  The one thing that I

1    would point out to the Court is that there is a certain amount

2    of familiarity that exists in a criminal case with the other

3    side, with the process, and there's a certain built-in reliance

4    on how things typically work, and, because of what had

5    happened, that reliance that often propels a case forward at a

6    pretty reasonable speed, we just can't do that anymore, and so

7    I'm having a considerable amount of time, and for good reason,

8    going through and checking things and explaining things and

9    verifying things.

10          I've talked to the experts in this case, who, all of

11    the original experts have agreed to come back, at least

12    verbally.  I've run their proposed estimates through Mike

13    Andrews at the First Circuit.  None of it seems unreasonable.

14    We are going to try to parse it out so that we don't spend a

15    ton of money up front.

16          THE COURT:  I'm glad you did that.

17          MR. SCULIMBRENE:  Attorney Andrews has been incredibly

18    helpful, both in terms of laying out what I need to do and

19    strategy.  But my hope is that we'll have the first auth. in

20    today for some of the people and then only use what we need,

21    depending on what happens in the case.  So, the big issue here

22    for us is --

23          THE COURT:  I assume it's going to involve a

24    generation of new reports.

25          MR. SCULIMBRENE:  Yes, yes.  Without that normal,

1    like, I don't know how else to explain it, just comity, it's

2    just taken a long time.  I am fully willing to accept the

3    responsibility for that.  I have a particular way of trying

4    cases and handling criminal cases, and I don't think I've ever

5    been accused of lack of thoroughness, but I think that in a

6    case like this that typical thoroughness has been not

7    sufficient, and so I've had to go do things like -- speaking

8    with the IT expert was really illuminating.  We talked in

9    February and we've talked a bunch of times over emails since

10   then.  Talking to Kevin Kennedy, who was the original

11   accounting expert.  I talked to him for almost two hours a

12   couple of weeks ago.  Those things were really -- they put me

13   in a direction that I would have never anticipated in either

14   December or February.

15           THE COURT:  Oh.

16           MR. SCULIMBRENE:  And, as a result, I just feel like,

17   if I'm going to do this in a way that both provides a fair

18   trial and prevents, you know, God forbid, something else

19   happening after trial, it's requiring more thoroughness than

20   I've ever had to use in a case, not because it's complicated.

21   I think you're right.  Fundamentally it's about accounting, IT

22   and the interaction between those two things.  What's really

23   making this more complex is trying to essentially reboot this

24   thing but without the normal, you know, like --

25           THE COURT:  Understandings between you and the

1    prosecutor's office.

2           MR. SCULIMBRENE:  Exactly, yeah.

3           THE COURT:  Although, you attribute it to the history

4    of this particular case, or are you suggesting it's something

5    involving your current relationship with counsel?

6           MR. SCULIMBRENE:  No, no, no.

7           THE COURT:  I didn't think so.

8           MR. SCULIMBRENE:  No, no.  Attorney Le and I talk on

9    email probably once every two weeks, Attorney Hunter less

10    frequently.  But, no, there's nothing like that here.  It's the

11    prior history.  It's one of those things.  If errors tend to

12    propagate in legal cases, the closer they are to the beginning

13    the bigger the propagation of errors.

14           THE COURT:  Because they branch out.  The new

15    directions that you've been pointed in after talking with, just

16    going with an example, the IT expert --

17           MR. SCULIMBRENE:  Yes.

18           THE COURT:  -- that you didn't anticipate February and

19    December.

20           MR. SCULIMBRENE:  Correct.

21           THE COURT:  I understand what you're saying, but I

22    can't understand what you're trying to suggest.  My question

23    for you is, to help me --

24           MR. SCULIMBRENE:  Yes.

25           THE COURT:  -- but without prejudicing your case, are

1   those things you can describe to me or not?  If they're not, I

2   take your word for it, but if they are, I'd like to understand

3   them.

4           MR. SCULIMBRENE:  Let me have one second.

5           THE COURT:  Yeah.

6           MS. LE:  Your Honor, if you want us to step out so you

7   can have a conversation without the government, we can do that

8   as well.

9           MR. SCULIMBRENE:  I think that would be much easier.

10          THE COURT:  I'll decide if it's necessary in a minute.

11  That was more curiosity, but I'm also interested in hearing it.

12  So, we'll circle back to it, and if I want to hear more about

13  it, I'll excuse counsel.

14          MR. SCULIMBRENE:  Okay.

15          THE COURT:  That would make it easier.  I know it

16  would simplify it.

17          MR. SCULIMBRENE:  Yes.

18          THE COURT:  I understand Kennedy's problems.  He

19  doesn't really think he has time to work on the case until

20  August?  Is that what it is?

21          MR. SCULIMBRENE:  So, what he told me was he could

22  start doing the background work in June, and that -- and I

23  explained this on the record before, that our hope is to file a

24  dispositive motion to dismiss, and then, if that's

25  unsuccessful, trial.  And I asked him, you know, I told him our

1   original timetable was the end of June, beginning of July, and

2   I said, Could you be ready for that?  And he's like, If I'm

3   starting in June I would not feel ready.  And I can explain a

4   little bit more about why it would take him extra time.

5           THE COURT:  You need Kennedy for the motion to

6   dismiss?

7           MR. SCULIMBRENE:  Yes.  As a matter of fact, I need

8   both Jason and -- I'm sorry -- Mr. Sgro and Mr. Kennedy for the

9   motion to dismiss.

10          THE COURT:  Sgro and Kennedy?

11          MR. SCULIMBRENE:  Yes.

12          THE COURT:  Yeah, I might have to ask counsel to step

13  out.  I'm just sort of at a loss, but you can fill me in.

14          Now, Mr. Krasnoo --

15          MR. SCULIMBRENE:  Yes.

16          THE COURT:  -- you describe him as a prosecutorial

17  misconduct expert.

18          MR. SCULIMBRENE:  That is what I have been -- yes,

19  that is correct.

20          THE COURT:  I sort of consider myself the

21  prosecutorial misconduct expert in this case, and I figure I

22  can handle that job.

23          MR. SCULIMBRENE:  I agree.

24          THE COURT:  I don't think I need a lawyer to tell me

25  the law.

1      MR. SCULIMBRENE:  No, I don't think -- the issue that

2  I'm looking for on this front is not necessarily the ethics

3  part, it's the prosecutor part, and so --

4      THE COURT:  I know something about that, too.

5      MR. SCULIMBRENE:  I agree.  The concern that I have is

6  that I would not know what to ask for or look for in certain

7  instances.

8      THE COURT:  Oh, okay.  You're consulting with him.

9      MR. SCULIMBRENE:  In the first instance I would assume

10  that I'm going to consult with all three of these people

11  about -- if you want, I can explain it to you, but I would

12  prefer to do it in a way -- yeah.

13      THE COURT:  My only question about Krasnoo is this.

14      MR. SCULIMBRENE:  Yes.

15      THE COURT:  Consulting with a prosecutorial expert

16  makes perfect sense to me, but do you plan to present testimony

17  from Krasnoo?

18      MR. SCULIMBRENE:  That is not clear yet.  I don't

19  understand if I need to do that at this moment.

20      THE COURT:  A lot of times when people want to present

21  lawyers as expert witnesses in trials --

22      MR. SCULIMBRENE:  I don't like that.

23      THE COURT:  -- I don't generally allow it.

24      MR. SCULIMBRENE:  Yeah.

25      THE COURT:  The only time I did allow it was one time

1     when both sides wanted it on an intellectual property issue,

2     that both sides wanted it, but that was rare, because usually I

3     figure I can tell the jury the law --

4           MR. SCULIMBRENE:  Correct.

5           THE COURT:  -- or tell myself the law.  Anyway, so

6     I'll wait a minute to hear from you on that.

7           MR. SCULIMBRENE:  Yeah.

8           THE COURT:  When do you think you're going to file

9     your motion to dismiss?

10           MR. SCULIMBRENE:  So, I can give you this information.

11     I think this is the point where, if you want me to answer the

12     questions, I would ask for it to be --

13           THE COURT:  All right.  Let's do it.  Counsel, we're

14     going to seal the courtroom.  I'm going to ask counsel and

15     those in the gallery to excuse themselves so counsel can fill

16     me in on some of these issues.

17         (Sealed ex parte proceedings held in closed courtroom)

18           (AUSA Le and AUSA Hunter reentered the courtroom)

19                     IN OPEN COURT:

20           THE COURT:  All right.  Well, all right.  So, I've

21     just heard and received information from defense counsel about

22     several issues I raised.  There were no new issues raised

23     during the conversation; it was just much more information

24     about the questions I asked counsel before.  I actually did

25     raise one new issue, but it's not a new issue in the case at

1    all, and it's all stuff that the prosecution is very much aware

2    of, based on where we've been thus far.

3           I am persuaded that the defendant needs more time.  I

4    am.  There's no way to explain that on the record in a way that

5    doesn't, at least potentially, prejudice the defendant, because

6    it was shared with me under seal, and it represents counsel's

7    thinking about how to approach not only the trial but a motion

8    to dismiss that's pending that he plans to supplement.

9    Because, actually, Attorney Brown did file a motion to dismiss

10   the case, too.

11          MR. SCULIMBRENE:  She did.  It was not on the same

12   ground.

13          THE COURT:  Yeah, but it's still there, it's pending.

14          MR. SCULIMBRENE:  I would prefer to, if I could,

15   ultimately --

16          THE COURT:  Supplemental it or replace it.

17          MR. SCULIMBRENE:  Replace it.

18          THE COURT:  Yeah.  He's asked for, defense counsel has

19   asked for June 2023, which is, you know, it's over a year from

20   now; it's a long time.  So, I guess I'm trying to look for a

21   solution here about how to resolve this problem, because these

22   delays, they do create problems for the party with the burden

23   of proof as well.  There is the potential for, you know, we

24   know the cliches, right, fading memories, lost evidence?

25          And didn't you have a witness pass?

1          MS. LE:  We did, your Honor.

2          MR. HUNTER:  We did, your Honor.

3          THE COURT:  Who was that?

4          MR. HUNTER:  Stanley Burrows.

5          THE COURT:  Refresh my memory.

6          MR. HUNTER:  He was the elderly gentleman who was on

7     the IT committee at United Way --

8          MS. LE:  He was a volunteer.

9          MR. HUNTER:  -- who was a volunteer.

10         THE COURT:  Okay.  Well, rest in peace, Mr. Burroughs.

11    Although, he does seem like a witness whose testimony

12    could be either just re-presented, depending on what you think

13    about it, or replaced by that of another member of the

14    committee.  It's not the same as some other witnesses, is all.

15    And I don't mean to minimize his role or minimize his passings.

16    It's just that -- okay.  But it goes to make the point that

17    these delays are not without a cost.

18         MS. LE:  And, of course, I'm sure the Court is already

19    considering the impact on the victims as well as part of your

20    thinking --

21         THE COURT:  Yeah.

22         MS. LE:  -- the victims' rights.

23         THE COURT:  I'm less concerned about that, to be

24    honest.  It's not that I'm unconcerned with the victims'

25    rights.  This is charitable money raised by, you know, many

1    thousands of donors, who certainly would be horrified to know

2    that -- would be horrified to know and even understand what

3    happened to the funds they donated.  So, I don't take it

4    lightly.

5           I didn't go into this very deeply in the order

6    granting a new trial, and I was careful not to cast any

7    aspersions against the United Way or Mr. Commisso in his role,

8    but they had a role in this whole problem.  It always seemed to

9    me that there was somewhat of a delegation or farming out of

10   some of the discovery judgments that had to be made in this

11   case to the victim and the victim vendor in a way that didn't

12   seem malevolent to the Court and doesn't seem malevolent to the

13   Court.  I think I referred to it as more a matter of

14   non-feasance than misfeasance or something like that.

15          It's just that the role of the victim and the victims'

16   counsel in this case is unique among cases I've ever seen or

17   been involved in.  And, again, while I don't ascribe any ill

18   motive to anybody involved, I described in the order in some

19   ways that the defendant could present that information in a way

20   that might be exculpatory or helpful to a defense, and it just,

21   in the discovery process my view is it created problems.

22          That's not to suggest that the victims' rights are not

23   important here.  They are important, but it's a unique

24   situation.

25          MS. LE:  And, your Honor, if I may just flag an issue

1    for you --

2              THE COURT:  You may.

3              MS. LE:  -- that I broached in early conversations

4    with new counsel, is that, given these issues, which, again, no

5    fault of Mr. Commisso or the government's expert, but the

6    nature of that engagement became problematic, right?  So, what

7    I told Mr. Sculimbrene early on is that the government is

8    exploring options to retain a different accounting firm to

9    provide a loss calculation here at the new trial.  So, that is

10   something that we're exploring.  Of course, the defendant has

11   all the discovery that relates to loss, that relates to the

12   government's IT expert as well.  So, this is something that we

13   hope will not be a recurring issue for the new trial.  And I

14   just want to flag that for the Court, because I've already

15   flagged that issue for defense counsel.

16             THE COURT:  Understood.  All I can say about it is --

17   what I will say about it, and I think I can say this with

18   confidence without betraying any sort of information presented

19   to me under seal, is the defendant's approach to these issues,

20   which I don't deem to be frivolous, or, if I thought they were

21   frivolous or fanciful, I wouldn't delay the trial based on

22   them, but they're not frivolous, they're not fanciful, and they

23   go further than that, because they're not simply quantitative,

24   they're qualitative, and they may not pan out at all, but they

25   take time to run down, is the problem.

1          I guess I'm particularly sympathetic in this case to

2    that, is that -- this isn't a secret -- they've been

3    particularly interested in obtaining the digital environment,

4    right?  And they have work to do to do that, based on what they

5    have, and that they think that may lead to inferences that not

6    only could be exculpatory in a trial setting but potentially

7    inform the motion to dismiss, and if I thought it was frivolous

8    or fanciful or a waste of time I wouldn't permit it, but it's

9    not.  That's number one.

10          Number two is, Mr. Sculimbrene has tried to comply

11    with my request that he reuse the same experts from the first

12    trial.  Some of them haven't been paid.  It's not your fault,

13    by the way.  Some of them haven't been paid, and they have

14    other commitments, and so they are working with him to tell him

15    about their availability and their timetable for getting the

16    work done.  But that was based on my request, because I would

17    like in some way to not burden the public or the taxpayers with

18    expenses of this criminal defense that are unnecessary.  The

19    ones that are necessary, they're necessary, but hiring new

20    experts to recreate a lot of wheels may be not necessary, and

21    it turns out -- I think you would agree with that,

22    Mr. Sculimbrene.

23          MR. SCULIMBRENE:  Yes.

24          THE COURT:  Here is what I think I want to do, and if

25    this doesn't -- what I'd like to try to do -- if this just

1       isn't workable, Mr. Sculimbrene, I want you to tell me.  It

2       might be, it might be that your work with the digital

3       environment, with your experts, some of which are new, some of

4       which are the same experts retained by prior counsel, it might

5       be that you could get this work done --

6                   MR. SCULIMBRENE:  Correct.

7                   THE COURT:  -- and still try the case in December.

8       It's possible.

9                   MR. SCULIMBRENE:  Yes.

10                  THE COURT:  So, I guess what I want to do is I want to

11      take the pressure off you, okay?  I'm not going to have you

12      against a wall that's going to prejudice your client's rights

13      or the quality of his defense, but I'd like to keep the trial

14      date on for now to at least let you work toward it, because it

15      might be we can get there, right?  It might be we can get there

16      and try the case on time.  I wouldn't mind having sort of a

17      periodic check in with you.  All right?  Because I'm not going

18      to pick up the motion to dismiss, the one that's pending,

19      because you want to replace it anyway.

20                  MR. SCULIMBRENE:  I do.  I want to replace it.

21                  THE COURT:  In fact, I'm going to deny that motion

22      without prejudice right now.

23                  MR. SCULIMBRENE:  Okay.  Thank you.

24                  THE COURT:  There you go.  I wasn't going to grant it

25      anyway, by the way.  It wasn't grounds to dismiss the case.  I

1    should have just denied it, but it's easier since you're going

2    to replace it, too.

3            MR. SCULIMBRENE:  Yeah.

4            THE COURT:  Yeah.  But the pattern alleged there, the

5    conduct alleged there to me was insufficient to dismiss the

6    case.  This is a serious case.  I've heard the evidence.  It's

7    not something I would lightly dismiss.  But you have other

8    ideas about what you want to argue, and you're going to file

9    that.  I'm not ruling out the possibility that you can get that

10   done and we can try this case in December, so for now I'm not

11   going to grant that motion, but I'm going to tell you that I'm

12   very open to it.

13           MR. SCULIMBRENE:  Okay.

14           THE COURT:  Here's the thing, though, because the last

15   thing I want to do is jerk around lawyers who are trying to

16   practice law, so let me just say this:  I'm trying to keep this

17   trial on track for December, but I've done it in kind of a,

18   let's face it, kind of a wishy-washy way, because I'm telling

19   defense counsel if you need more time, you're going to get it.

20           So, I want to say to the prosecutors -- and I'm

21   focused more on them now, Mr. Sculimbrene, so I'm just going to

22   be up front about it.

23           If it's just easier for you to know for a fact it's

24   going to be, like, in the first half of 2023 rather than

25   December, if you would rather have certainty, I can do that, I

1    can give him what he wants.  Okay?  Go ahead.

2           MS. LE:  Your Honor, if we have three months, three

3    months before trial, which is about three months from now, if

4    the Court and counsel have a discussion where counsel really

5    cannot move the needle for whatever reasons that might present

6    itself with staffing, whatever those issues may be, that where

7    we aren't in a position to take a position on, then we'll hold

8    off on issuing subpoenas, but we do need a solid three months.

9           THE COURT:  Yeah.

10          MS. LE:  There's a lot of people involved that we have

11   to coordinate.  We have witnesses who are in foreign countries;

12   we have to deal with visas, travel.  So, if we know in

13   August --

14          THE COURT:  Yeah.  You need to know basically by,

15   like, basically that August-September line, right there.

16          MS. LE:  Yes, your Honor.

17          THE COURT:  That's helpful.

18          MS. LE:  Thank you, your Honor.

19          THE COURT:  Okay.  At least we know kind of now -- at

20   least we know what we've got to know.  All right?

21          MR. SCULIMBRENE:  Yes.

22          THE COURT:  This is hard.  I'm not trying to jerk

23   anybody around.

24          Because you need to defend your client.

25          And you need to prove the case, respectfully.

1    But I don't think it's impossible to do what you're

2    saying.  I want you to keep trying.

3            MR. SCULIMBRENE:  Yes, sir.

4            THE COURT:  If it becomes too burdensome, you know I'm

5    going to listen to you.

6            MR. SCULIMBRENE:  Yes, sir.

7            THE COURT:  Okay.  And I'll end up granting the

8    motion.  I'm not going to promise you it's going to be June,

9    but it will be a lot easier than December if you can't swing

10   it.  Okay?  It's got to be based on a few things, like what

11   else in going on in the court.  But the idea of punting this

12   for a year right now just doesn't sit right, especially --

13   you're your own enemy in some ways, Mr. Sculimbrene, because

14   you've described to me very articulately what you're trying to

15   do.  All right?

16           MR. SCULIMBRENE:  Yes.

17           THE COURT:  And I just have confidence that, if you

18   can't pull it off on the timetable that allows you to try the

19   case in December, you're at least going to be able to explain

20   that to me and it's not going to be a bunch of mumbo jumbo --

21           MR. SCULIMBRENE:  Yeah.

22           THE COURT:  -- because you didn't give me that now.

23           MR. SCULIMBRENE:  Thank you, your Honor.

24           THE COURT:  All right.  So, the motion is denied

25   without prejudice to continue, but I'm telling people, I'm on

1    the record, somebody is typing it all, if you can't get this

2    done, what you need to do, I'm going to allow your continuance

3    eventually.

4              MR. SCULIMBRENE:  Thank you, your Honor.

5              THE COURT:  All right.  Are there any other issues

6    anybody wanted me to cover today?

7              MR. SCULIMBRENE:  No, your Honor.

8              THE COURT:  I'm really sorry for wishy-washy orders

9    like this.  I know you need better, but I'm just trying to keep

10   it on track.

11             MR. SCULIMBRENE:  I think that part of this is me

12   trying to make sure that I don't run into a last-minute

13   continuance.

14             THE COURT:  Yeah.

15             MR. SCULIMBRENE:  I've appeared in front of you in a

16   number of cases where you've offered a continuance and I've

17   refused it.

18             THE COURT:  Yeah.

19             MR. SCULIMBRENE:  I do not want to be the lawyer who

20   continues things at the last minute.  So, I filed this earlier

21   than I normally would because of the complexity of the issues,

22   but I understand the Court's order.

23             THE COURT:  And AUSA Le has been good enough to give

24   us reality here today about, like, when she needs to know by,

25   and that's really helpful, and we're not going to stray beyond

1    that a few weeks.  If we can't know then, we're going to know,

2    we're going to make a decision.  Okay?

3              MR. SCULIMBRENE:  Thank you, your Honor.

4              THE COURT:  Okay, everybody.

5              MR. HUNTER:  Thank you, your Honor.

6              THE COURT:  Thank you.

7         (WHEREUPON, the proceedings adjourned at 3:00 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

24

1                    C E R T I F I C A T E

2

3

4          I, Brenda K. Hancock, RMR, CRR and Official Court

5    Reporter of the United States District Court, do hereby certify

6    that the foregoing transcript constitutes, to the best of my

7    skill and ability, a true and accurate transcription of the

8    within proceedings.

9

10

11

12

13   Date: ___6/28/22          /s/ Brenda K. Hancock
                               Brenda K. Hancock, RMR, CRR
14                             Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25